**CT** Corporation

**Service of Process Transmittal**
03/06/2009
CT Log Number 514536911

|||||||||||||||||||||||||||||||||||||||||||||||||

**TO:** Jen Majic
Unum Group
2211 Congress Street
Portland, ME 04122-0590

**RE:** **Process Served in Tennessee**

**FOR:** Unum Group Corporation (Assumed Name) (Domestic State: DE)
Unum Group (True Name)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Jack Goodman, M.D., Pltf. vs. Unum Group, etc., Dft. |
| **DOCUMENT(S) SERVED:** | Summons, Return, Complaint, Exhibit A, Interrogatories and Request for Production |
| **COURT/AGENCY:** | Chancery Court of Tennessee for the 30th Judicial District at Memphis, Shelby County, TN
Case # CH09004341 |
| **NATURE OF ACTION:** | Insurance Litigation - Policy benefits claimed for disability - Breach of contract - Seeking declaratory judgment |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Knoxville, TN |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 03/06/2009 at 09:00 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days from the date this summons is served upon you |
| **ATTORNEY(S) / SENDER(S):** | Thomas R. Greer
Bailey & Benfield
6256 Poplar Avenue
Memphis, TN 38119
901-680-9777 |
| **REMARKS:** | Even though the Complaint names the Defendant as Unum Group, the Summons commands service on Unum Group Corporation. |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 03/06/2009, Expected Purge Date: 03/11/2009
Image SOP
Email Notification, Marti Cornwell mcornwell@unum.com
Email Notification, Judy Drake jdrake@unum.com
Email Notification, Stefanie Kerin skerin@unum.com
Email Notification, Jen Majic jmajic@unum.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 800 S. Gay Street
Suite 0221
Knoxville, TN 37929-9710 |
| **TELEPHONE:** | 865-342-3522 |

Page 1 of 1 / EF

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**EXHIBIT A**

| STATE OF TENNESSEE 30th JUDICIAL DISTRICT CHANCERY COURT AT MEMPHIS | **SUMMONS** | DOCKET NUMBER CH- 09-0434-1 |
|---|---|---|

| Plaintiff | Defendant |
|---|---|
| Jack Goodman, M.D. | UNUM Group Corporation |

TO:   (NAME AND ADDRESS OF DEFENDANT)

C T Corporation System
800 S. Gay Street
Suite 2021
Knoxville, TN 37929

Method of Service:

☐ Certified Mail
☐ Shelby County Sheriff
☐ Comm. Of Insurance*
☐ Secretary of State*
☒ Out of County Sheriff*
☐ Private Process Server
☐ Other
*Attach Required Fees

You are summoned to defend a civil action filed against you in the Chancery Court of Shelby County, Tennessee. Your answer to this action must be made within thirty (30) days from the date this summons is served upon you. You must file your answer with the Clerk of the Court and send a copy to the plaintiff's attorney at the address listed below. If you fail to defend this action within thirty (30) days of service, judgment by default can be rendered against you for the relief sought in the complaint.

| Attorney for plaintiff or plaintiff if filing Pro Se: (Name, address & telephone number)  Thomas R. Greer Bailey & Benfield 6256 Poplar Avenue Memphis, TN 38119 (901)680-9777 | ISSUED 27 of February ,20 09  Dewun R. Settle, Clerk and Master  By: _____ Deputy Clerk & Master |
|---|---|

| TO THE SHERIFF: | Came to hand 27 day of Feb , 20 09  Sheriff _____ #31364 |
|---|---|

**Submit one original and one copy for each defendant to be served.

! Questions regarding this summons and the attached documents should be addressed to the Attorney listed above.

For ADA assistance only, call (901)379-7895

09/18/07

Served Special Assistant Secretary
Service of Process to C.T. Corporation
System, the Registered Agent for

## RETURN ON SERVICE OF SUMMONS

I hereby return this summons as follows: (Name of Party Served) _Unum Group_

☐ Served _____     ☐ Not Found     _Company_
☐ Not Served _____     ☐ Other     _Becky Carter_

DATE OF RETURN: This _6_ day of _Mar_ _____, By _Wuc Byon #31264 KCSO_
20_09_

Sheriff or other authorized person to serve process

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____, 20___, I sent, postage prepaid, by registered return

receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case CH-_____ to

the defendant _____. On the ____ day of _____, 20___, I received the return

receipt, which had been signed by _____ ____ on the ____ day of _____, 20___.

The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

| Sworn to and subscribed before me on this ____ day of _____ , 20___. | Signature of plaintiff, plaintiff's attorney or other person authorized by statute to serve process. |
|---|---|
| Signature of ____ Notary Public or ____ Deputy Court Clerk | |
| My Commission Expires: | |

### NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S):
    Tennessee law provides a four thousand dollar ($4,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

Mail list to: Clerk & Master
             140 Adams Ave.
             Room 308
             Memphis, TN 38103

Please state file number on list.

ATTACH
RETURN
RECEIPT
HERE
(IF APPLICABLE)

## CERTIFICATION (IF APPLICABLE)

| I, Dewun R. Settle, Clerk & Master of the Chancery Court in the State of Tennessee, Shelby County, do certify this to be a true and correct copy of the original summons issued in this case. | Dewun R. Settle, Clerk & Master<br><br>By: _Vicky Hall_ <br><br>D.C. & M. |
|---|---|

09/18/07

IN THE CHANCERY COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH DISTRICT AT MEMPHIS

SHELBY COUNTY
CHANCERY COURT
FEB 2 7 2009
DEWUN R. SETTLE, C & M
TIME:_____ BY:_____

JACK GOODMAN, M.D.,

    Plaintiff,

v.

                                          Case No. CH-09-0434-1

UNUM GROUP, d/b/a Paul Revere Life Insurance
Company, also d/b/a UnumProvident Corporation,
also d/b/a Provident Life and Accident Insurance
Company,

    Defendant.

## COMPLAINT FOR DECLARATORY JUDGMENT AND MONEY DAMAGES

       TO THE HONORABLE CHANCELLORS OF THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS:

       The Plaintiff, Dr. Jack Goodman, files his Complaint for Money Damages against Unum Provident Corporation, and for his causes of action, states:

### PARTIES

       1.    Plaintiff Jack Goodman, M.D. is an adult resident citizen of Shelby County, Tennessee, and an anesthesiologist licensed to practice medicine in Shelby County, Tennessee.

       2.    Defendant Unum Provident [UNUM] is an insurance company organized and existing under the laws of the State of Tennessee. UNUM is a Tennessee corporation with corporate offices in Chattanooga, Tennessee, at 1 Fountain Square, Chattanooga, Tennessee 37402.

       3.    All of the wrongs complained of herein occurred within this jurisdiction and within

1

the applicable statute of limitations and this Court has jurisdiction.

## FACTS

4.      In June of 1985, Dr. Goodman purchased a disability insurance policy, called a "Preferred Professional Policy" from UnumProvident Corporation [hereinafter "Unum" or "Defendant"]. This contract for disability insurance was entered into in Memphis, Shelby County, Tennessee, and is attached to this Complaint as Exhibit A, pursuant to Tenn. R. Civ. P. 10.3.

5.      The disability policy provides that Unum will pay a Residual Disability benefit in the event that Dr. Goodman, because of injury or sickness:

      a..      (1) becomes unable to perform one or more of the important duties of his regular occupation; or

             (2) becomes unable to perform the important duties of his regular occupation for more than 80% of the time normally required to perform them; and

      b.      is engaged in his regular occupation or another occupation and his monthly earnings are reduced to 80% or less of his prior earnings; and

      c.      is under the regular and personal care of a physician.

The policy also provided required that, to receive the residual disability benefit, Dr. Goodman's residual disability must follow after a period of Total Disability that lasts at least as long as the Qualification Period, if any. This policy was in effect during all times material to the actions that are the subject of this Complaint.

6.      Dr. Goodman added coverage to the policy, by purchasing an additional rider in 1991. The maximum monthly benefit for total disability under the new rider is $8,000.00, plus a $1,000.00 cost of living allowance. The cost of living additions to Dr. Goodman's monthly residual disability

2

benefits increase annually under the terms of the policy.

7.      In 1992, Dr. Goodman injured his back and took time off work for his injury. He attempted to return to work, but eventually remained off work for enough time to qualify for disability benefits under his policy, and filed for total disability benefits in March 1993. In that application, Dr. Goodman enclosed an attending physician statement from Dr. Edward Pratt that notes Dr. Goodman's diagnosis as Lumbar Radicular Syndrome. Dr. Pratt reported Dr. Goodman had symptoms of back and leg pain, lower back spasms and a decreased range of motion. Dr. Pratt noted Dr. Goodman's limitations were "unable to work."

8.      On April 5, 1993, Dr. Goodman returned to work in a limited capacity and found an administrative job supervising nurse anesthetists at Crittenden County Hospital. Dr. Goodman still received benefits under his COLA (cost of living) provisions in his policy, even though sometimes his income from the supervisory job was high enough that he did not receive disability payments. His attending physician issued another statement that noted that Dr. Goodman had returned to work in a limited capacity, with "no lifting, bending, etc. (un)til able."

9.      On April 13, 1993, the Defendant issued Dr. Goodman's first benefit payment for $5,700.00. Dr. Goodman's claim has since been paid to March 1, 2008. His last payment, which included cost of living allowances, amounted to $17,820.00 and would increase according to the cost of living provisions in the policy on the anniversary of his disability.

10.     Dr. Goodman continued to work at the Crittenden County Hospital until January 31, 2006, when his contract with the hospital was cancelled because the job requirements changed and his supervisory position became too strenuous to perform with a back injury. After being released from this contract, Dr. Goodman looked for work within his abilities, considered retraining, and

3

found intermittent part time work at other locations supervising nurse anesthetists. In January of 2009 Dr. Goodman started a new part-time, contractual, supervisory position with Baptist Memorial Hospital in Memphis, again supervising nurse anesthetists and performing occasional anesthesiologist duties. The supervisory position at Baptist, like his previous position at Crittenden Hospital, does not pay as well as his previous employment as a practicing anesthesiologist, and is not full-time work.

11. At this time, Dr. Goodman is under the care of his primary care physician, Dr. Cary Finn. Dr. Finn is an internal medicine specialist who monitors Dr. Goodman's pain management prescriptions and has provided the Defendant with periodic reports on Dr. Goodman's condition, in accordance with the policy terms. Dr. Goodman is able to work at his supervisory position and live a fairly normal life with pain management drugs and physical accommodations, including daily stretching exercises, lifts and self-imposed physical limitations.

12. Sometime after 2007, one of the Defendant's employees conducted a review of Dr. Goodman's file. Dr. Goodman was first told by Unum that a "vocational expert" was reviewing his file. Dr. Goodman specifically asked what was the level of education and/or expertise of the "expert" and Unum refused to supply this information. Later, Unum revealed that an orthopedic surgeon had conducted the review, but still refused to name the individual who reviewed the file.

13. The Defendant's orthopedic surgeon-employee then interviewed Dr. Finn without notifying Dr. Goodman. After this interview and without physically examining Dr. Goodman, the Defendant's employee-doctor opined that the available medical records do not support Dr. Goodman's physical restrictions and limitations of no lifting over 40 pounds and no sitting in the cold for extended periods.

4

14.     Based on the employee-doctor's review of Dr. Goodman's file and on the employee-doctor's interview with Dr. Goodman's primary care physician, the Defendant elected to terminate Dr. Goodman's disability payments by letter dated March 31, 2008. Dr. Goodman still does not know the identity or the education of the employee-doctor "vocational expert."

15.     After receiving the letter terminating his disability benefits, Dr. Goodman was examined by Peter Lindy, M.D., an orthopedic surgeon in Memphis, Tennessee. Dr. Lindy sent a letter to the Defendant on June 13, 2008, providing his opinion that Dr. Goodman continues to suffer from chronic lumbar strain that is easily aggravated by certain conditions. Dr. Lindy opined that Dr. Goodman could continue to work as an anesthesiologist under the following conditions: (1) avoid sitting in cold rooms for greater than 1-2 hours; (2) avoid lifting more than 40-50 pounds; (3) avoid pushing and pulling more than 75-100 pounds.

16.     Based on Dr. Lindy's exam, Dr. Goodman appealed the termination of his residual disability benefits. The Defendant disregarded Dr. Lindy's opinion, denied his appeal, and has continued to deny payment of Dr. Goodman's disability benefits. Further, although the Defendant states that it relied on a doctor-employee's review of Dr. Lindy's findings in denying the appeal, the Defendant has not revealed the name of the doctor-employee, in violation of its own policies. Dr. Goodman has received no further benefits from his claim, although his ability to perform the physical duties of his job as an anesthesiologist has not changed since his original injury in 1992.

## I. BREACH OF CONTRACT

The Plaintiff incorporates by reference as if fully set forth verbatim each and every allegation of this Complaint.

5

17.     Plaintiff alleges that the Defendant's conduct as set forth in the above paragraphs amounts to breach of contract, and requests incidental and consequential damages resulting from the breach, which are listed below in paragraph 24.


## II.  COMMON LAW BAD FAITH

The Plaintiff incorporates by reference as if fully set forth verbatim each and every allegation of this Complaint.

18.     The Defendant, as the Plaintiff's disability carrier, had a duty of dealing with its insured fairly and in good faith in handling a claim by its insured under the disability and/or "residual disability" provision of the disability insurance contract.  The Plaintiff aavers that a fiduciary relationship was established between the Plaintiff and Defendant by virtue of Plaintiff's purchasing the disability insurance policy from Defendant, requiring Defendant to handle the Plaintiff's claim with the utmost care and trust.  The violation of its duty to deal with the Plaintiff fairly and in good faith subjects the Defendant to liability for the extra-contractual tort of bad faith.

19.     The Plaintiff avers that Defendant's bad faith conduct and failure to reinstate disability benefits exposes Defendant to liability for the unpaid benefits, plus interest and penalties.

20.     The Plaintiff avers that the conduct of Defendant alleged herein was performed intentionally, recklessly, fraudulently and maliciously, entitling the Plaintiff to a substantial award of punitive damages.


## III.  STATUTORY BAD FAITH

The Plaintiff incorporates by reference as if fully set forth verbatim each and every allegation

6

of this Complaint.

21.     The Defendant, as the Plaintiff's disability insurance carrier, had a duty of dealing with its insured fairly and in good faith in handling a claim by its insured under the "residual disability" provision of the disability insurance contract.  The Plaintiff avers that a fiduciary relationship was established between the Plaintiff and Defendant when the Plaintiff purchased the disability policy from Defendant.  This fiduciary relationship required Defendant to handle the Plaintiff's claims with the utmost care and trust.  Defendant's violation of its duty to deal with the Plaintiff fairly and in good faith subjects the Defendant to liability for all applicable bad faith penalties.

22.     Plaintiff further avers that Defendant's conduct as set forth herein constituted bad faith under Tenn. Code Ann. § 56-7-105 and inflicted additional expenses upon the Plaintiff sufficient to entitle the Plaintiff to all applicable bad faith penalties.

## IV.  TENNESSEE CONSUMER PROTECTION ACT

The Plaintiff incorporates by reference as if fully set forth verbatim each and every allegation of this Complaint.

23.     Plaintiff further alleges that Defendant's conduct alleged herein constituted unfair and deceptive actions sufficient to subject Defendant to liability for violating the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, *et seq.*  Further, the Plaintiff alleges that the Defendant's unfair and deceptive actions as set forth herein were performed willfully, entitling the Plaintiff to treble damages provided by Tenn. Code Ann. § 47-18-109.

## V. **DECLARATORY JUDGMENT**

The Plaintiff incorporates by reference as if fully set forth verbatim each and every allegation

of this Complaint.

24.      Plaintiff also seeks a Declaratory Judgment from this Honorable Court pursuant to

Tenn. R. Civ. P. 57 and Tenn. Code Ann. § 29-14-101 *et seq.*, finding that Dr. Goodman's disability

claim is meritorious and ordering the Defendant to pay benefits under the policy according to its

terms.

### **DAMAGES**

25.      As a result of the Defendants' affirmative misconduct, the Plaintiff has been

damaged. The Plaintiff seeks to recover all damages to which he may be entitled under the law from

the Defendant and which include, but are not limited to, the following:

a)   Loss of use of funds due under the policies of insurance;
b)   Damages for violation of the Tennessee Consumer Protection Act including treble damages and attorney fees;
c)   All applicable bad faith penalties;
d)   Emotional pain and suffering;
e)   Statutory and discretionary costs;
f)   Punitive damages;
g)   Pre-Judgment Interest;
h)   Post-Judgment Interest;
i)   Incidental and consequential damages as a result of the Defendants' breach of contract, including but not limited to attorneys' fees and litigation expenses incurred in this action for reinstatement of Dr. Goodman's disability policy benefits; and
g)   All such further relief, both general and specific, to which they may be entitled under the premises.

8

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff Dr. Jack Goodman sues the

Defendant Unum Group and prays for a judgment against the Defendant for breach of contract,

common law bad faith, statutory bad faith, and violation of the Tennessee Consumer Protection Act,

for a declaratory judgment ordering unpaid benefits to be paid immediately and future benefits paid

in accordance with the provisions of the disability insurance contract, and for all damages to which

he may be entitled under the law, including but not limited to compensatory, punitive, and treble

damages in such amounts as may appear fair and reasonable to this Honorable Court, and for all such

further relief, both general and specific, to which he may be entitled under the premises.


Respectfully submitted,


R. Sadler Bailey ( #011230)
Thomas R. Greer (#024452)
Attorneys for Plaintiff
6256 Poplar Avenue
Memphis, Tennessee 38119
(901) 680-9777

9



DUPLICATE

JACK A GOODMAN MD

0102184181   JUN 13, 1985   **Date of Issue**

*Your Coverage & Policy Benefits*





# THE PAUL REVERE
## LIFE INSURANCE COMPANY

**18 CHESTNUT STREET
WORCESTER, MASSACHUSETTS 01608**

The Paul Revere Life Insurance Company will pay the benefits provided in this Policy for loss due to Injury or Sickness.

We have issued this Policy to You in consideration of the payment of the premium and the statements made in Your application. Your application is part of Your Policy.

**Insured**        JACK A GOODMAN MD

**Policy Number**    0102184181   JUN 13, 1985      **Date of Issue**

**NON-CANCELLABLE AND GUARANTEED CONTINUABLE TO AGE 65. NO CHANGE IN PREMIUM RATES.** As long as the premium is paid on time, We cannot change Your Policy or its premium rate until the first premium due date after Your 65th birthday.

**RENEWAL OPTIONS AFTER YOU REACH AGE 65. SUBJECT TO CHANGE IN PREMIUM RATES.** From age 65 to age 72, You may continue Your Policy for a Total Disability benefit with a limited benefit period while You are actively and regularly employed full time. This option is explained in PART 5.

When You are no longer actively and regularly employed after age 65 or when You reach age 72, You may continue Your Policy for the rest of Your life. The benefit will be limited to a Hospital Confinement Indemnity. This benefit will take the place of all other benefits under the Policy. This option is explained in PART 6.

**YOUR RIGHT TO CANCEL.** If You are not satisfied with Your Policy, You may cancel it. Return the Policy to Us or Our agent by midnight of the tenth day after the date You receive it. If You return the Policy by mail, it must be properly addressed, postage prepaid, and postmarked no later than midnight of that tenth day. Our mailing address is 18 Chestnut Street, Worcester, Massachusetts 01608. Within ten days after We receive the Policy, We will refund any premium You have paid. The Policy will be considered to have never been issued.

**READ YOUR POLICY CAREFULLY.** It is a legal contract between You and Us.

Signed for The Paul Revere Life Insurance Company.

*John H. Budd*

**Secretary**

*Aubrey K. Reid Jr.*

**President**

Countersigned by _____

CHARTERED IN MASSACHUSETTS
## DISABILITY INCOME POLICY
## THE PREFERRED PROFESSIONAL

940 S-84                                                                 84-2

DEFINITION OF COVERAGE   IF ANY

ONE.

POLICY SCHEDULE

INSURED        JACK A GOODMAN MD

POLICY         0102184181                JUN 13, 1985    DATE OF
NUMBER                                                   ISSUE

TABLE OF BENEFITS

| TOTAL DISABILITY | COMMENCEMENT DATE | RATE OF MONTHLY INDEMNITY | MAXIMUM BENEFIT PERIOD |
|---|---|---|---|
| ON INJURY: | 31ST DAY OF DISABILITY | $6,000.00 | TO AGE 65 |
| | 31ST DAY OF DISABILITY | $1,000.00 | TO 365TH DAY OF DISABILITY |
| ON SICKNESS: | 31ST DAY OF DISABILITY | $6,000.00 | TO AGE 65 |
| | 31ST DAY OF DISABILITY | $1,000.00 | TO 365TH DAY OF DISABILITY |

BUT FOR ANY MAXIMUM BENEFIT PERIOD OTHER THAN LIFETIME, TOTAL DIS-
ABILITY BENEFITS AND RESIDUAL DISABILITY BENEFITS SHALL NOT CONTINUE
BEYOND YOUR 65TH BIRTHDAY, EXCEPT AS STATED IN YOUR POLICY.
ALIFICATION PERIOD FOR RESIDUAL DISABILITY:    0 DAYS
ENDMENT TO POLICY 847 - REVISED DEFINITION PRIOR EARNINGS/ADD RETURN TO WORK

-----------------------------TABLE OF ADDITIONAL BENEFITS-----------------

| ADDITIONAL BENEFITS ATTACHED | AMOUNT OF BENEFITS | MAXIMUM BENEFIT PERIOD | ANNUAL PREMIUM PRIOR TO AGE 65 |
|---|---|---|---|
| FETIME TOTAL DISABILITY | $6,000.00 PER MONTH | LIFETIME | $339.6. |
| TURE INCOME OPTION | | | $84.45 |
| NIT OF INCREASE | $6,000.00 | --- | |
| AXIMUM NUMBER OF UNITS | 8 UNITS | | |
| XPIRATION DATE: | JUN 13, 1499 | | |

(TABLE OF ADDITIONAL BENEFITS CONTINUED ON NEXT PAGE)

PREMIUM SUMMARY        NONSMOKER

| | PRIOR TO AGE 60 BUT AT LEAST FIVE YEARS | THEREAFTER AND PRIOR TO AGE 65 |
|---|---|---|
| ANNUAL PREMIUM FOR ADDITIONAL BENEFITS | $1,343.23 | $0,149.05 |
| NUAL PREMIUM FOR TOTAL DISABILITY BENEFITS | $2,708.20 | $2,867.00 |
| TOTAL ANNUAL PREMIUM | $3,051.53 | $3,716.05 |
| MODE OF PREMIUM COLLECTED | $281.19 MONTHLY | $303.39 MONTHLY |

GRANT PLAN

POLICY NUMBER · 016215418          JUN 13, 1985    ATE OF
                                                   ISSUE

NSURED        JACK A GOODMAN MD

                         POLICY SCHEDULE

-------------------TABLE OF ADDITIONAL BENEFITS (CONTINUED)-------------------
         ADDITIONAL                AMOUNT         MAXIMUM       ANNUAL PREMIUM
      BENEFITS ATTACHED          OF BENEFITS   BENEFIT PERIOD  PRIOR TO AGE 65

SS OF USE - LIFETIME BENEFIT        --          LIFETIME        $121.00

ST OF LIVING                        --             --           $569.90
OTAL AND RESIDUAL DISABILITY

TAL DISABILITY IN                   --             --           $205.80
OUR OCCUPATION

PPLEMENTAL SOCIAL INSURANCE   $1,000.00 PER MONTH               $73.50
OMMENCEMENT DATE:    366TH DAY OF DISABILITY

                         REFER TO PAGE ONE

## POLICY CHANGE RIDER

| Insured | Policy No. | Date Of Policy Change |
|---|---|---|
| Jack A Goodman MD | 01021841810 | June 13, 1993 |

At the request of the Insured and in consideration of the premium change stated herein, it is agreed that the above Policy is changed as of the date shown above, as follows:

TYPE OF CHANGE :   Exercised Future Income Option
                   Lifetime Total Disability Benefit H858 Changed

| | MAXIMUM MONTHLY AMOUNT | |
|---|---|---|
| | OLD | NEW |
| Total Disability Benefit for Injury and Sickness: | $8,000.00 | $8,500.00 |
| Additional Monthly Benefit: | $1,000.00 | $1,000.00 |
| Lifetime Total Disability Benefit H858: | $8,000.00 | $8,500.00 |
| Supplemental Social Insurance Benefit: | $1,000.00 | $1,000.00 |

In consideration of the above change, the annual premium for your benefits have changed as follows :

| | PREMIUM | |
|---|---|---|
| | OLD | NEW |
| Total Disability Benefits: | $3,436.50 | $3,673.40 |
| Cost of Living Indemnity Benefit, Form H768: | $780.50 | $840.30 |
| Total Disability In Your Occupation Benefit, Form H779: | $286.90 | $312.65 |

(CONTINUED ON THE NEXT PAGE)

In the event additional insurance is issued under this Policy Change, the incontestable clause of the Policy will apply to such additional insurance from the date the Policy Change becomes effective.

All provisions of the policy to which this Policy Change is attached remain the same except where changed as stated above.

This Policy Change is effective on the date shown above. It forms a part of the Policy to which it is attached.

Signed for Us at Worcester, Massachusetts.

THE PAUL REVERE LIFE INSURANCE COMPANY

*John H. Budd*

Secretary

Form A592

-1-

## POLICY CHANGE RIDER

| Insured | Policy No. | Date Of Policy Change |
|---|---|---|
| Jack A Goodman MD | 01021841810 | June 13, 1993 |

At the request of the Insured and in consideration of the premium change stated herein, it is agreed that the above Policy is changed as of the date shown above, as follows:

|  | PREMIUM | |
|---|---|---|
|  | OLD | NEW |
| Loss of Use - Lifetime Benefit, Form H784: | $156.60 | $167.40 |
| Lifetime Total Disability Benefit, Form H858: | $478.70 | $572.70 |
| ALL OTHER BENEFITS REMAIN THE SAME | OLD | NEW |
| Total Annual Premium for policy: | $5,252.15 | $5,679.40 |
| Modal Premium: MONTHLY | $473.49 | $511.95 |

In the event additional insurance is issued under this Policy Change, the incontestable clause of the Policy will apply to such additional insurance from the date the Policy Change becomes effective.

All provisions of the policy to which this Policy Change is attached remain the same except where changed as stated above.

This Policy Change is effective on the date shown above. It forms a part of the Policy to which it is attached.

Signed for Us at Worcester, Massachusetts.

THE PAUL REVERE LIFE INSURANCE COMPANY

*John N. Budd*

Secretary

Form A592

-2-

## POLICY CHANGE RIDER

| Insured | Policy No. | Date of Policy Change |
|---|---|---|
| Jack A. Goodman, MD | A-01 02184181 | June 13, 1987 |

At the request of the Insured and in consideration of the premium change stated herein, it is agreed that the above Policy is changed, as of the date shown above, as follows:

The Rate of Monthly Indemnity specified in the Table of Benefits of the Policy Schedule for Total Disability from Injury and Sickness is hereby amended as follows:

### TABLE OF BENEFITS

| TOTAL DISABILITY | COMMENCEMENT DATE | RATE OF MONTHLY INDEMNITY | MAXIMUM BENEFIT PERIOD |
|---|---|---|---|
| From Injury: | 31st Day of Disability | $7,000.00 | To Age 65 |
| | 31st Day of Disability | $1,000.00 | To 365th Day of Disabilit |
| From Sickness: | 31st Day of Disability | $7,000.00 | To Age 65 |
| | 31st Day of Disability | $1,000.00 | To 365th Day of Disabilit |

In consideration of the above change, the annual premium for such benefits is changed as follows:

1. The annual premium for Total Disability Benefits is increased from $1,708.30 to $1,994.00.

2. The annual premium for the Loss of Use – Lifetime Benefit, Form H784, is increased from $121.00 to $136.90.

(Continued on the Next Page)

In the event additional insurance is issued under this Policy Change, the incontestable clause of the Policy will apply to such additional insurance for a period of two years from the date the Policy Change becomes effective.

All provisions of the Policy to which this Policy Change is attached remain the same except where changed as stated above.

This Policy Change is effective on the date shown above. It forms a part of the Policy to which it is attached.

Signed for Us at Worcester, Massachusetts.

Accepted by

X _____
Insured

THE PAUL REVERE LIFE INSURANCE COMPANY

John H. Budd
Secretary

orm A&S 592 S-82

82-2

Jack A. Goodman

# POLICY CHANGE RIDER

| Insured | Policy No. | Date of Policy Change |
|---|---|---|
| Jack A. Goodman, MD | A-01 02184181 | June 13, 1987 |

At the request of the Insured and in consideration of the premium change stated herein, it is agreed that the above Policy is changed, as of the date shown above, as follows: (Continued)

3. The annual premium for the Cost of Living Indemnity –Total and Residual Disability Benefit, Form H768, is increased from $569.90 to $667.70.

4. The annual premium for Total Disability In Your Occupation Benefit, Form H779, is increased from $205.80 to $243.00.

The amount of Lifetime Total Disability specified in the Table of Additional Benefits of the Policy Schedule for the Lifetime Total Disability Benefit, Form H771, is increased from $6,000.00 Per Month to $7,000.00 Per Month.

In consideration of the above change, the annual premium for Lifetime Total Disability Benefit, Form H771, is increased from $339.60 to $396.50.

As of this date, the current total annual premium for this policy and any attached benefits is changed from $3,057.55 to $3,551.05. Since your policy provides for two stages of premium payment, there will be separate one-step premium increases for the base policy benefits and certain benefits added to the policy subsequent to the Date of Issue. You will be notified in writing at least 30 days prior to any premium increase Please write to the Home Office or contact your agent if you would like a more detailed explanation of such premium increases.

In the event additional insurance is issued under this Policy Change, the incontestable clause of the Policy will apply to such additional insurance for a period of two years from the date the Policy Change becomes effective.

All provisions of the Policy to which this Policy Change is attached remain the same except where changed as stated above.

This Policy Change is effective on the date shown above. It forms a part of the Policy to which it is attached.

Signed for Us at Worcester, Massachusetts.

THE PAUL REVERE LIFE INSURANCE COMPANY

Accepted by

X _____
             Insured

_John H. Bush_
                    Secretary

## POLICY CHANGE RIDER

| Insured | Policy No. | Date Of Policy Change |
|---|---|---|
| Jack A Goodman MD | 0102184181 | June 13, 1991 |

At the request of the Insured and in consideration of the premium change stated herein, it is agreed that the above Policy is changed as of the date shown above, as follows:

|  | PREMIUM | |
|---|---|---|
|  | OLD | NEW |
| Loss of Use - Lifetime Benefit, Form H784: | $136.90 | $156.60 |
| Lifetime Total Disability Benefit, Form H858: | $396.50 | $478.70 |
| ALL OTHER BENEFITS REMAIN THE SAME | OLD | NEW |
| Total Annual Premium for policy: | $4,409.85 | $5,105.65 |
| Modal Premium: MONTHLY | $397.69 | $460.31 |

In the event additional insurance is issued under this Policy Change, the incontestable clause of the Policy will apply to such additional insurance for a period of two years from the date the Policy Change becomes effective.

All provisions of the policy to which this Policy Change is attached remain the same except where changed as stated above.

This Policy Change is effective on the date shown above. It forms a part of the Policy to which it is attached.

Signed for Us at Worcester, Massachusetts.

THE PAUL REVERE LIFE INSURANCE COMPANY

*John H. Buell*

Secretary

Accepted by

Insured

Form A&S 592s82

-2-

## POLICY CHANGE RIDER

| Insured | Policy No. | Date Of Policy Change |
|---|---|---|
| Jack A Goodman MD | 01021841810 | June 13, 1991 |

At the request of the Insured and in consideration of the premium change stated herein, it is agreed that the above Policy is changed as of the date shown above, as follows:

TYPE OF CHANGE :   Exercised Future Income Option
Lifetime Total Disability Benefit H858 Changed

|  | MAXIMUM MONTHLY AMOUNT | |
|---|---|---|
|  | OLD | NEW |
| Total Disability Benefit for Injury and Sickness: | $7,000.00 | $8,000.00 |
| Additional Monthly Benefit: | $1,000.00 | $1,000.00 |
| Lifetime Total Disability Benefit H858: | $7,000.00 | $8,000.00 |
| Supplemental Social Insurance Benefit: | $1,000.00 | $1,000.00 |

In consideration of the above change, the annual premium for your benefits have changed as follows :

|  | PREMIUM | |
|---|---|---|
|  | OLD | NEW |
| Total Disability Benefits: | $2,852.80 | $3,290.00 |
| Cost of Living Indemnity Benefit, Form H768: | $667.70 | $780.50 |
| Total Disability In Your Occupation Benefit, Form H779: | $243.00 | $286.90 |

(CONTINUED ON THE NEXT PAGE)

In the event additional insurance is issued under this Policy Change, the incontestable clause of the Policy will apply to such additional insurance for a period of two years from the date the Policy Change becomes effective.

All provisions of the policy to which this Policy Change is attached remain the same except where changed as stated above.

This Policy Change is effective on the date shown above. It forms a part of the Policy to which it is attached.

Signed for Us at Worcester, Massachusetts.

THE PAUL REVERE LIFE INSURANCE COMPANY

*John H. Budd*

Secretary

Accepted by

Insured

Form A&S 592s82

-1-

# TABLE OF CONTENTS

|  | Page |
|---|---|
| Renewal Provisions | 1 |
| Your Right to Cancel | 1 |
| Policy Schedule | 3 |
| Part 1 — Definitions | 6 |
| Part 2 — Benefits | |
| Total Disability Benefit | 8 |
| Residual Disability Benefit | 8 |
| Presumptive Total Disability | 8 |
| Total Disability Because of Cosmetic or Transplant Surgery | 9 |
| Rehabilitation | 9 |
| Part 3 — Exclusions | 9 |
| Pre-existing Conditions Limitation | 9 |
| Part 4 — Recurrent and Concurrent Disability | 10 |
| Part 5 — Renewal Option if Employed. Total Disability Benefit — Limited Benefit Period | 10 |
| Part 6 — Renewal Option if Not Employed. Hospital Confinement Indemnity Benefit | 11 |
| Part 7 — Claims | 12 |
| Part 8 — Premium and Reinstatement | 13 |
| Part 9 — Waiver of Premium | 14 |
| Part 10 — The Contract | 14 |

A copy of Your application, added benefits You have purchased, and any added provisions are attached at the back of the Policy.

# PART 1
## DEFINITIONS

THE FOLLOWING WORDS HAVE SPECIAL MEANINGS. THEY ARE IMPOR-
TANT IN DESCRIBING YOUR RIGHTS AND OUR RIGHTS UNDER THE POLICY.
REFER BACK TO THESE MEANINGS AS YOU READ YOUR POLICY.

1.1   **"Policy"** means the legal contract between You and Us. The policy,
the application, the Policy Schedule, and any attached papers that
We call riders, amendments, or endorsements make up the entire
contract between You and Us.

1.2   **"You"** and **"Your"** refer to the Insured named in the Policy Schedule.

1.3   **"We"**, **"Us"** and **"Our"** refer to The Paul Revere Life Insurance Com-
pany. Our Home Office is 18 Chestnut Street, Worcester, Massachu-
setts, 01608.

1.4   **"Date of Issue"** means the date that the Policy becomes effective. It
is shown on the Policy Schedule.

1.5   **"Injury"** means accidental bodily injury sustained after the Date of Is-
sue and while Your Policy is in force.

1.6   **"Sickness"** means sickness or disease which first manifests itself af-
ter the Date of Issue and while Your Policy is in force.

1.7   **"Physician"** means any licensed practitioner of the healing arts prac-
ticing within the scope of his or her license. A Physician must be a
person other than You.

1.8   **"Monthly Earnings"**. If You own any portion of a business or profes-
sion, Your "Monthly Earnings" means:

    a.   Income earned by that business or profession due to Your
personal activities;
    b.   Less Your share of business expenses which are deductible for
Federal income tax purposes;
    c.   Plus Your salary and any contributions to a pension or profit
sharing plan made on Your behalf.

From any other source of employment, "Monthly Earnings" means
Your salary, fees, commissions and bonuses and any other income
earned for services performed.

"Monthly Earnings" does not include:

    a.   Income from deferred compensation plans, disability income
policies, or retirement plans; or
    b.   Income not derived from Your vocational activities.

1.9   **"Prior Earnings"** means the greater of:

    a.   Your average Monthly Earnings for the six calendar months
just before Your Disability began; or
    b.   Your highest average Monthly Earnings for any two successive
years during the five-year period just before Your Disability
began.

On the 366th day of Your continuing Disability and on each subsequent anniversary of Your continuing Disability, We will add an amount to Prior Earnings. This amount will be 7 percent of the amount determined under (a) or (b), whichever is greater.

1.10 **"Total Disability"** means that because of Injury or Sickness:

    a. You are unable to perform the important duties of Your regular occupation; and
    b. You are not engaged in any other gainful occupation; and
    c. You are under the regular and personal care of a Physician.

1.11 **"Residual Disability"** means that because of Injury or Sickness:

    a. (1) You are unable to perform one or more of the important duties of Your regular occupation; or
       (2) You are unable to perform the important duties of Your regular occupation for more than 80% of the time normally required to perform them; and
    b. You are engaged in Your regular occupation or another occupation and Your Monthly Earnings are reduced to 80% or less of Your Prior Earnings; and
    c. You are under the regular and personal care of a Physician.

Residual Disability must follow right after a period of Total Disability that lasts at least as long as the Qualification Period, if any.

1.12 **"Disability"** means Total Disability or Residual Disability.

1.13 **"Commencement Date"** is the day shown on the Policy Schedule when benefits begin during a continuous period of Disability.

1.14 **"Qualification Period"** is the number of days shown on the Policy Schedule that Total Disability must continue before Residual Disability benefits can be payable.

1.15 **"Maximum Benefit Period"** is the longest period of time We will pay benefits during any continuous period of Disability. It is shown on the Policy Schedule.

For any maximum benefit period other than lifetime, We will not pay Total Disability benefits beyond the later of:

    a. Your 65th birthday; or
    b. The date on which 24 months of benefits have been paid.

In no event will We pay Residual Disability benefits beyond Your 65th birthday unless Residual Disability begins within three months of Your 65th birthday. In that case, We will pay this benefit for a period not to exceed three months while You remain Residually Disabled.

1.16 **"Pre-existing Condition"** means a Sickness or physical condition for which, prior to the Date of Issue:

    a. Symptoms existed that would cause an ordinarily prudent person to seek diagnosis, care, or treatment; or
    b. Medical advice or treatment was recommended by or received from a Physician.

-7-

## PART 2
## BENEFITS

**2.1    TOTAL DISABILITY BENEFIT.**

We will periodically pay a Total Disability benefit during Your continuous Total Disability. The monthly amount We will pay is shown on the Policy Schedule.

This benefit will begin on the Commencement Date. We will continue to pay it while You remain Totally Disabled. But in no event will We pay beyond the Maximum Benefit Period. For periods of less than a month, We will pay 1/30th of the benefit for each day of disability.

*What is the Total Disability benefit?*

**2.2    RESIDUAL DISABILITY BENEFIT.**

We will periodically pay a Residual Disability benefit during Your continuous Residual Disability if the Residual Disability begins before Your 65th birthday.

*When is the Residual Disability benefit payable?*

The monthly amount of this benefit equals:

$$\frac{A - B}{A} \; X \; \text{RATE OF MONTHLY INDEMNITY}$$

*How is the Residual Disability benefit calculated?*

"A" is your Prior Earnings as defined in Section 1.9.
"B" is Your Monthly Earnings for the month for which Residual Disability is claimed. If Monthly Earnings are 20 percent or less of Prior Earnings, We will consider "B" to be zero.
"RATE OF MONTHLY INDEMNITY" is shown on the Policy Schedule.

During any one Disability each of the first six monthly payments of this benefit will not be less than 50 percent of the RATE OF MONTHLY INDEMNITY.

This benefit will begin on either the Commencement Date or the day after Your Total Disability ends, if later. We will continue to pay this benefit while You remain Residually Disabled, but not beyond the Maximum Benefit Period. For periods of less than a month, We will pay 1/30th of the benefit for each day of disability.

**2.3    PRESUMPTIVE TOTAL DISABILITY.**

If Injury or Sickness causes You to totally and irrecoverably lose:

*Can Total Disability be automatically assumed?*

a.    Your power of speech; or
b.    Your hearing in both ears; or
c.    Your sight in both eyes; or
d.    Use of both hands; or
e.    Use of both feet; or
f.    Use of one hand and one foot;

We will consider You to be Totally Disabled whether or not You are able to work or require treatment by a Physician. The Total Disability benefit will begin on the Commencement Date. We will pay it for the amount and Maximum Benefit Periods shown on the Policy Schedule.

**2.4   TOTAL DISABILITY BECAUSE OF COSMETIC OR TRANSPLANT SUR-GERY.**

*Is cosmetic or transplant surgery covered?*

After six months from the Date of Issue, if You become Totally Disabled because You have surgery to:

a.   Improve Your appearance or prevent disfigurement; or
b.   Transplant part of Your body to someone else;

We will consider You to be Totally Disabled due to Sickness.

**2.5   REHABILITATION.**

*What happens if a program of retraining or rehabilitation is entered?*

While receiving Total Disability benefits, You may choose to join a rehabilitation program. We will consider You to remain Totally Disabled if:

a.   Such a program is a professional retraining or educational program at a graduate school level; or
b.   Such a program is sponsored by the Federal or state government; or
c.   We approve the program before You join.

We will pay the Total Disability benefit without requiring the care of a Physician while:

a.   You actively participate in the program; and
b.   You are not able to perform the important duties of Your regular occupation.

We will pay up to 36 months but not beyond what is left of the applicable Maximum Benefit Period.

If You cease to be an active participant, You may still be eligible for Total Disability benefits. But, You must meet the requirements of Total Disability. Also, We will not pay beyond what is left of the Maximum Benefit Period.

**PART 3
EXCLUSIONS**

**3.1   EXCLUSIONS.**

*What if disability results from war or normal pregnancy?*

We will not pay benefits for Disability due to:

a.   An act or accident of war, whether declared or undeclared; or
b.   Normal pregnancy or childbirth. But We will cover complications of either of these.

**3.2   PRE-EXISTING CONDITIONS LIMITATION.**

*What if a disability results from a Pre-existing Condition?*

We will not pay benefits for a Pre-existing Condition if it was not disclosed on Your application. Also, We will not pay benefits for any loss We have excluded by name or specific description.

-9-

## PART 4
## RECURRENT AND CONCURRENT DISABILITY

### 4.1  RECURRENT DISABILITY.

If after the end of a period of Disability You become disabled from the same or related causes, We will deem it a separate Disability. But if such recurrence occurs within six months of the end of the prior period, We will deem it a continuation of the prior Disability.

Such periods of Disability separated by six months or less will be deemed to be continuous in order to determine the Commencement Date. Such periods of Total Disability separated by six months or less will be deemed to be continuous in order to determine completion of the Qualification Period, if any.

### 4.2  CONCURRENT DISABILITY.

If a Disability is caused by more than one Injury or Sickness, or from both, We will pay benefits as if the disability was caused by only one Injury or Sickness. We will not pay benefits for both Total Disability and Residual Disability for the same period.

## PART 5
## RENEWAL OPTION IF EMPLOYED. TOTAL DISABILITY BENEFIT — LIMITED BENEFIT PERIOD

### 5.1  RENEWAL OPTION.

From age 65 to age 72, You may continue Your Policy for the Total Disability benefit while:

   a.   You remain actively and regularly employed full time; and
   b.   The premium is paid on time.

We can require proof after Your 65th birthday that You have continued to be actively and regularly employed full time.

You cannot elect this option after the RENEWAL OPTION IF NOT EMPLOYED. HOSPITAL CONFINEMENT INDEMNITY BENEFIT in PART 6 becomes effective.

The Policy must be in force when You elect this option.

### 5.2  TOTAL DISABILITY BENEFIT — LIMITED BENEFIT PERIOD.

If You elect this option, We will pay the same Total Disability benefit subject to the same provisions, exceptions, and limitations in the Policy. But, the Residual Disability benefit will not be payable and the Maximum Benefit Period will be 24 months or the period shown on the Policy Schedule, if it is less.

### 5.3  PREMIUMS

The premium will be the rate then in effect for Your rating group. We can change the premium rate but only if We change the rate for everyone who has this policy form in Your rating group in Your state.

*What if a disability reoccurs?*

*What if a disability is due to two causes at the same time?*

*Can the Policy be renewed after age 65 if You are still working?*

*How will the benefit period be limited?*

*What will the premium be?*

Any premium paid after Your 65th birthday for a period not covered by Your Policy under this option will be returned to You. Or at Your request, We will apply it to the premium payable under the RENEWAL OPTION IF NOT EMPLOYED. HOSPITAL CONFINEMENT INDEMNITY BENEFIT in PART 6.

## PART 6
## RENEWAL OPTION IF NOT EMPLOYED.
## HOSPITAL CONFINEMENT INDEMNITY BENEFIT

**6.1   RENEWAL OPTION.**

*Can the Policy be renewed after age 65 if not working?*

When You are no longer actively and regularly employed after Your 65th birthday or when You reach age 72, You may continue Your Policy for the rest of Your life, as long as the premium is paid on time. The benefit will be limited to a Hospital Confinement Indemnity. This benefit will take the place of all other benefits under Your Policy and, unless We state otherwise, any benefits under riders added to the Policy.

The Policy must be in force when You elect this option.

**6.2   HOSPITAL CONFINEMENT INDEMNITY BENEFIT.**

*What will the benefit be?*

If You elect this option, We will pay You a Hospital Confinement Indemnity of 50 dollars per day while You are confined in a legally operated hospital because of Injury or Sickness.

This benefit will begin on the date You are confined. We will continue to pay it while You are confined. But We will not pay for more than six months during each continuous confinement.

For the purpose of this benefit, after a period of confinement ends and You are confined again from the same or related cause within 180 days, We will consider it to be a continuation of the first confinement.

For the purpose of this benefit, "hospital" will not mean:

    a.   A place of convalescence, nursing home care, or care for the aged; or
    b.   A place for the care or treatment of mental disorders, drug addiction, or alcoholism; or
    c.   A place that is used primarily for custodial, educational, or rehabilitative care.

**6.3   EXCEPTIONS.**

*What other Policy provisions will change?*

Under this option, the Waiver of Premium, the Recurrent Disability, and Benefit provisions of the Policy will not apply. However, all of the other provisions, exceptions, and limitations in the Policy will apply.

**6.4   PREMIUMS.**

*What will the premium be?*

The premium will be the rate then in effect for Your rating group. We can change the premium rate but only if We change the rate for everyone who has the policy form in Your rating group in Your state.

## PART 7
## CLAIMS

### 7.1   TIME OF LOSS.

All losses must occur while Your Policy is in force. But, termination of Your Policy will not affect any claim for Disability that begins within 30 days of the date of an Injury causing such Disability.

*When must losses occur?*

### 7.2   WRITTEN NOTICE OF CLAIM.

Written notice of claim must be given to Us within 30 days after a covered loss starts, or as soon as reasonably possible.

The notice will be sufficient if it identifies You and is sent to Our Home Office, 18 Chestnut Street, Worcester, Massachusetts 01608, or is given to Our agent.

*When must written notice be given?*

### 7.3   CLAIM FORMS.

After We receive the written notice of claim, We will send You Our proof of loss forms within 15 days. If We do not, You will meet the written proof of loss requirements if You send Us, within the time set forth below, a written statement of the nature and extent of Your loss.

*Is there a form for proof of loss?*

### 7.4   WRITTEN PROOF OF LOSS.

Written proof of loss must be sent to Us within 90 days after the end of a period for which You are claiming benefits. If that is not reasonably possible, Your claim will not be affected. But, unless You are legally incapacitated, written proof must be given within one year.

We can also require reasonable proof from You of Your:

a.   Prior Earnings; and
b.   Monthly Earnings for the month for which Disability is claimed.

This may include income tax returns, financial statements, accountant's statements or other proof acceptable to Us. We can have an audit performed as often as is reasonably required while Your claim is continuous. Such an audit will be at Our expense.

*What types of proof of loss might be required?*

### 7.5   PHYSICAL EXAMINATIONS.

At Our expense, We can have a Physician of Our choice examine You as often as reasonably required while Your claim is continuous.

*Can there be an Independent medical exam performed?*

### 7.6   TIME OF PAYMENT OF CLAIMS.

After We receive written proof of loss:

a.   We will pay any benefits then due that are not payable periodically;
b.   We will pay at the end of each 30 days any benefits due that are payable periodically — subject to continuing proof of loss.

*When will benefits be paid?*

**7.7   PAYMENT OF CLAIMS.**

*To whom will benefits be paid?*

All benefits will be paid to You. But, if any benefit is payable to Your estate or if You are not competent to give a valid release, We can pay up to 1,000 dollars to one of Your relatives who We believe is entitled to it. If We do that in good faith, We will not be liable to anyone for the amount We pay.

**7.8   ASSIGNMENT.**

*When must notice of an assignment be sent?*

We will not be bound by an assignment of Your Policy or any claim unless We receive a written assignment at Our Home Office before We pay the benefits claimed. We will not be responsible for the validity of any assignment.

**7.9   MISSTATEMENT OF AGE.**

*What if there is a misstatement of age?*

If Your age has been misstated, the benefits under the Policy will be those that the premium You paid would have purchased at Your correct age.

# PART 8
# PREMIUM AND REINSTATEMENT

**8.1   PAYMENT OF PREMIUM.**

The first premium on Your Policy is payable on the Date of Issue. After that, premiums are payable in the amount and mode shown on the Policy Schedule. Payments may be made at Our Home Office, 18 Chestnut Street, Worcester, Massachusetts 01608, or to Our agent.

*When are premiums due?*

Premiums may be paid annually or semi-annually. If Our rules permit it, You can pay the premiums quarterly or monthly. We will allow You to change this by written request. But, We will not allow a change while You are disabled.

**8.2   GRACE PERIOD.**

After the first premium has been paid, a grace period of 31 days is allowed for late payment of premium. Your Policy will remain in force during the grace period.

*What happens if a premium payment is late?*

If the premium is not paid when it is due or within the grace period, the Policy will lapse.

**8.3   REINSTATEMENT.**

If Your Policy lapses because the premium is not paid when due or within the grace period, it will be reinstated if We or Our agent accepts payment of the premium without requiring a reinstatement application.

*How can a lapsed Policy be reinstated?*

If We receive the premium due at Our Home Office within 57 days from the date the premium was due, We will not require evidence of Your insurability.

If We receive the premium after 57 days, We will require a reinstatement application. We will issue You a conditional receipt for the premium. If We approve Your application, the Policy will be reinstated as of the date of Our approval. If We disapprove Your application, We must do so in writing within 45 days of the date of the conditional receipt or the Policy will be reinstated on the 45th day.

The reinstated Policy will cover only loss due to:

    a.  Injury sustained after the date of reinstatement; or
    b.  Sickness that begins more than ten days after such date.

Except for this and any new provisions that are added to the reinstated Policy, Your rights and Our rights will be the same as before the Policy lapsed.

### 8.4    PREMIUM REFUND AT DEATH.

Upon notice of Your death, We will make a pro rata refund of any premium paid for a period beyond the date of Your death.

*Is there any premium refund at death?*

## PART 9
## WAIVER OF PREMIUM

### 9.1    WAIVER OF PREMIUM.

After You have been Disabled for 90 consecutive days, We will waive any premium that becomes due while You remain Disabled. Your Policy and its benefits will continue as if the premium had been paid.

We will also refund any premium that became due and was paid during those first 90 days of Disability.

When You are no longer eligible for Waiver of Premium, You can continue Your Policy in force by paying the next premium that becomes due.

Waiver of Premium will not apply to any premiums which become due after You elect the RENEWAL OPTION IF NOT EMPLOYED. HOSPITAL CONFINE-MENT INDEMNITY BENEFIT in PART 6.

*When will premiums be waived?*

## PART 10
## THE CONTRACT

### 10.1    CHANGES TO THE POLICY.

No one, including Our agent, has the right to change or waive any part of this Policy unless the change is approved in writing on the Policy by one of Our officers.

*Can the Policy be changed?*

### 10.2    INCONTESTABLE.

    a.  After Your Policy has been in force for two years, excluding any time You are Disabled, We cannot contest the statements in the application.

    b.  No claim for loss incurred or Disability beginning after two years from the Date of Issue will be reduced or denied because a disease or physical condition existed before the Date of Issue unless it is excluded by name or specific description.

*For how long is the Policy contestable?*

*What if the Policy differs with state requirements?*

### 10.3   CONFORMITY WITH STATE STATUTES.

Any provision in this Policy which, on its Date of Issue, conflicts with the laws of the state in which You reside on that date is amended to meet the minimum requirements of such laws.

### 10.4   LEGAL ACTION.

*When can legal action be brought under this Policy?*

You cannot bring legal action within 60 days from the date written proof of loss is given. You cannot bring it after three years from the date written proof of loss is required.

## SUPPLEMENTAL SOCIAL INSURANCE BENEFIT RIDER

**DEFINITIONS.** In this rider:

**"Policy Benefit"** means the Total Disability benefit payable under Your Policy.

**"Legislated Benefits"** means disability income benefits paid under Social Security and similar Federal, state, and local laws. This includes workers' compensation and occupational disease benefits.

All definitions in Your Policy apply to this rider. All provisions of Your Policy stay the same except where We change them by this rider.

### THIS BENEFIT.

This rider will pay You an added monthly benefit. To qualify:

1. You must be continuously Totally Disabled; and
2. The Policy Benefit must be payable for such disability; and
3. Legislated Benefits must not be payable for such disability.

### WHEN PAYABLE AND THE AMOUNT.

If You qualify, this added monthly benefit will start on the Commencement Date for this benefit. That date and the monthly amount are shown on the Policy Schedule.

### HOW LONG WE WILL PAY.

We will pay the added monthly benefit until one of the following happens:

1. The Policy Benefit for the disability ends; or
2. Legislated Benefits become payable for the disability; or
3. You start receiving retirement benefits under Social Security or similar government acts; or
4. Your 65th birthday.

We will not pay this added monthly benefit if Legislated Benefits would be paid except for this rider.

### PROOF THAT YOU QUALIFY.

You must give Us written proof that You qualify for the added monthly benefit. Such written proof must be satisfactory to Us. That includes:

1. Proof that You made timely application for Legislated Benefits.
2. Proof that Legislated Benefits are not payable.

If Your application for Legislated Benefits is denied, We may require that You appeal. We may also require that You reapply from time to time.

**RESUMPTION OF THIS BENEFIT.**

After the Commencement Date for the added monthly benefit, if Legislated Benefits end but We are still paying You the Policy Benefit, We will start paying the added monthly benefit. We will start as of the date Legislated Benefits end.

**IF YOU ARE RESIDUALLY DISABLED.**

The added monthly benefit under this rider is not payable while You are Residually Disabled. But Your Policy has a Residual Disability benefit. You may qualify for an increase in the Residual Disability benefit. To do so, You must meet three conditions.

1. You must be Residually Disabled; and
2. The Residual Disability benefit must be payable for such disability; and
3. Legislated Benefits must not be payable for such disability.

If You qualify, We will add this added monthly benefit to the Policy Benefit when We calculate the amount of Residual Disability benefit. We will start to do this after the Commencement Date of this benefit.

**FUTURE CHANGE OPTION.**

The amount of Legislated Benefits for which You are eligible, if disabled, may be reduced as You have fewer dependents. If that happens, You may choose to increase Your Policy Benefit.

You may increase the Policy Benefit by up to one-half of the added monthly benefit under this rider. But the Policy Benefit, after the increase, cannot exceed Our then published income, issue, and participation limits.

When the Policy Benefit is increased, the added monthly benefit of this rider is decreased by the same amount.

You may choose to do this once during the life of the Policy and this rider. The condition of Your health does not matter.

You must give Us written notice of Your choice. It has to be within six months of the change in dependents. You must give Us evidence that Legislated Benefits have been reduced because of a change in dependents.

The increased Policy Benefit will start on either:

1. The Commencement Date for the Policy Benefit; or
2. The date We approve the increase;

whichever is later.

The premium for the increase will be at the published rate on the date We approve the increase. It will depend on:

1. Your age at that time; and
2. Our risk classification for Your Policy.

-2-

## TERMINATION.

This rider will end on the earliest of:

1. The date Your Policy ends.
2. The date You begin receiving Social Security retirement benefits.
3. Your 65th birthday.

The annual premium for this rider is shown in the Policy Schedule.

The Date of Issue of this rider is the same as that of Your Policy. If We issued this rider after Your Policy, the Date of Issue is shown below.

Signed for Us at Worcester, Massachusetts.

THE PAUL REVERE LIFE INSURANCE COMPANY

Secretary                    President

## FUTURE INCOME OPTION BENEFIT RIDER

**DEFINITIONS.** In this rider:

**"Policy Benefit"** means the Rate of Monthly Indemnity payable under Your Policy to which this rider is added. That amount is shown on the Policy Schedule.

**"Option Date"** means each even-numbered anniversary of the Date of Issue that occurs on or before the Expiration Date.

**"Unit of Increase"** is an amount by which the Policy Benefit can be increased on an Option Date. That amount is shown on the Policy Schedule. The maximum number of Units of Increase is also shown on the Policy Schedule.

**"Expiration Date"** is the date this rider ends. That date is shown on the Policy Schedule.

**"Earned Income"** means the greater of Your average Monthly Earnings for:
1. The twelve months just before the date of Your request for an increase in the Policy Benefit; or
2. Any two successive years during the five-year period just before the date of Your request.

All definitions in Your Policy apply to this rider. All provisions of Your Policy stay the same except where We change them by this rider.

## FUTURE INCOME OPTION BENEFIT.

You may apply for up to one Unit of Increase as of any Option Date. You may apply for part of a Unit of Increase as of any Option Date.

If all or part of a Unit of Increase is not used as of an Option Date, You may carry it over and apply for it on the next Option Date. But You cannot carry it over beyond that Option Date.

On the first Option Date, You may also apply for up to one additional Unit of Increase if You are not disabled. But You must also exercise all of Your current Unit of Increase. This additional Unit of Increase cannot be carried over.

In no event may You exercise more than two Units of Increase as of any Option Date. To use all or part of a carried-over Unit of Increase You must also exercise all of Your current Unit of Increase. The total number of Units of Increase exercised can never exceed the maximum number of Units of Increase shown on the Policy Schedule.

If You qualify, We will increase Your Policy Benefit by the amount for which You apply.

### TO QUALIFY FOR AN INCREASE.

You will qualify for an increase if, at the time You apply:

1. Your Earned Income is sufficient for an increase. This will be determind by Our published underwriting rules and issue and participation limits in effect at the time You apply; and

2. The sum of all of Your disability income coverage, after the increase, is not more than the maximum coverage We offer to new applicants of Your class of risk. This will be determined by Our published underwriting rules and issue and participation limits in effect at the time You apply. We will figure the sum of Your disability income coverage by adding up the benefits You would receive from:

   a. Us; and
   b. Any other insurer; and
   c. Any government agency.

### APPLICATION FOR AN INCREASE.

You may apply for an increase as of any Option Date. We will send You an application form. This form must be completed and returned to Us within 60 days before the Option Date. This form will ask You for a statement of Your Earned Income and disability income coverage. This form will not ask You for proof of good health.

You may apply for no more than one Unit of Increase during any continuing disability.

### WHEN AN INCREASE IS PAYABLE.

An increase in Your Policy Benefit under this rider will be effective as of the applicable Option Date. But if the Option Date upon which an increase is elected occurs while You are disabled, We will begin to pay the increased Policy Benefit on the ninety-first day of continuous disability after that Option Date. We will pay the increased Policy Benefit while Your disability continues and while the Policy Benefit is payable.

### THE PREMIUM.

The premium for each increase will be at the rate for Your age at Your nearest birthday on the applicable Option Date. We will figure this according to either:

1. Your class of risk when We issued Your Policy; or
2. Your class of risk on the Option Date of the increase;

whichever is more favorable to You.

Also, if the premium for Your Policy is being waived on the Option Date, You will not have to pay the premium for the increase until the premium for Your Policy becomes payable again.

You must make the first payment of the premium for an increase to Our Home Office or to Our agent. This must be done no later than 31 days after the Option Date.

**TERMINATION.**

This rider will end when one of the following happens:

1. The Expiration Date for this rider; or
2. When the total of all increases in the Policy Benefit equals the value of the maximum Units of Increase shown on the Policy Schedule; or
3. A premium for the Policy or this rider is not paid on time; or
4. Upon Your written request to end this rider. In that case, You must return the Policy to Us. We will make the proper endorsement and reissue the Policy to You.

The annual premium for this rider is shown in the Policy Schedule.

The Date of Issue of this rider is the same as that of Your Policy. If We issued this rider after Your Policy, the Date of Issue is shown below.

Signed for Us at Worcester, Massachusetts.

THE PAUL REVERE LIFE INSURANCE COMPANY

*John H. Budd*                    *Aubrey K. Reid Jr.*

Secretary                                        President

## LIFETIME TOTAL DISABILITY BENEFIT RIDER

This rider provides a Lifetime Total Disability benefit. We will pay this benefit during Your continuous Total Disability if:

1. The Total Disability begins before age 65; and
2. The Total Disability continues until age 65; and
3. The benefits under the Policy to which this rider is added have been paid during Your Total Disability.

This benefit will start to pay on the later of: (a) Your 65th birthday; or (b) the date the Total Disability benefit payable under Your Policy ends. We will pay it while You remain Totally Disabled for as long as You live.

The monthly amount We will pay will be based on the amount shown on the Policy Schedule. Any Cost of Living benefit rider added to Your Policy shall apply to this amount. The amount shown on the Policy Schedule plus any Cost of Living increase that applies to this rider shall be multiplied by a factor. The factor to be used will be determined by the table below.

| Age at the Start of Total Disability which Continues until Age 65 | Factor |
|---|---|
| 55 or less | 1.0 |
| 56 | .9 |
| 57 | .8 |
| 58 | .7 |
| 59 | .6 |
| 60 | .5 |
| 61 | .4 |
| 62 | .3 |
| 63 | .2 |
| 64 | .1 |

Benefits will not be payable under this rider for any period for which benefits are payable under:

1. The Total Disability benefit under Your Policy; or
2. Any Presumptive Total Disability — Lifetime Benefit Rider that may be added to Your Policy.

This rider will end:

1. At the same time the Policy ends; or
2. On the first premium due date after Your 65th birthday;

whichever happens first.

All definitions in Your Policy apply to this rider. All provisions of Your Policy stay the same except where We change them by this rider.

The annual premium for this rider is shown on the Policy Schedule.

The Date of Issue of this rider is the same as that of Your Policy. If We issued this rider after Your Policy, the Date of Issue is shown below.

Signed for Us at Worcester, Massachusetts.

THE PAUL REVERE LIFE INSURANCE COMPANY

*John H. Budd*                    *Aubrey K. Reid Jr.*

Secretary                         President

## AMENDMENT TO POLICY

This amendment changes the Policy to which it is attached.

The following language is added at the beginning of the first sentence in the section entitled "PRE-EXISTING CONDITIONS LIMITATION":

"During the first two years from the Date of Issue,"

All provisions of Your Policy remain the same except where We change them by this amendment.

The Date of Issue of this amendment is the same as that of Your Policy. If We issued this amendment after Your Policy, the Date of Issue is shown below.

Signed for Us at Worcester, Massachusetts.

THE PAUL REVERE LIFE INSURANCE COMPANY

Secretary                    President

A&S 600 S-82

82-2

## LOSS OF USE — LIFETIME BENEFIT RIDER

This rider deletes the provision called "PRESUMPTIVE TOTAL DISABILITY" in the Policy to which it is added.

The following is substituted:

LOSS OF USE — LIFETIME BENEFIT

If before age 65, Injury or Sickness causes You to totally and irrecoverably lose:

1. Your power of speech; or
2. Your hearing in both ears; or
3. Your sight in both eyes; or
4. Use of both hands; or
5. Use of both feet; or
6. Use of one hand and one foot;

We will consider You to be Totally Disabled whether or not You are able to work or require treatment by a physician.

The Total Disability benefit will begin on the date such loss occurs. We will continue to pay it as long as You live. Payment of this benefit will be in lieu of all other benefits under Your Policy.

This rider will end when the Policy ends or when You reach age 65, if earlier.

All definitions in Your Policy apply to this rider. All provisions of Your Policy stay the same except where We change them by this rider.

The premium charge for this rider will end when this rider ends. The annual premium for this rider is shown on the Policy Schedule.

The Date of Issue of this rider is the same as that of Your Policy. If We issued this rider after Your Policy, the Date of Issue is shown below.

Signed for us at Worcester, Massachusetts.

THE PAUL REVERE LIFE INSURANCE COMPANY

Secretary                    President

H784 S-85

85-1

## TOTAL DISABILITY IN YOUR OCCUPATION BENEFIT RIDER

This rider deletes the definition titled "**Total Disability**" in its entirety and substitutes the following definition in the Policy to which it is added:

"**Total Disability**" means that because of Injury or Sickness:
1. You are unable to perform the important duties of Your regular occupation; and
2. You are under the regular and personal care of a Physician.

You will not be eligible for benefits under any Supplemental Social Insurance benefit rider that may be added to Your Policy unless;
1. You are Totally Disabled and not engaged in any other gainful occupation; or
2. You are Residually Disabled.

This rider will end:
1. When the Policy ends; or
2. On the first premium due date after Your 65th birthday;
whichever happens first.

All definitions in Your Policy apply to this rider. All provisions of Your Policy remain the same except where We change them by this rider.

The annual premium for this rider is shown on the Policy Schedule.

The Date of Issue of this rider is the same as that of Your Policy. If We issued this rider after Your Policy, the Date of Issue is shown below.

Signed for Us at Worcester, Massachusetts.

THE PAUL REVERE LIFE INSURANCE COMPANY

Secretary                        President

H779 S-84                                                        84-2

## COST OF LIVING INDEMNITY — TOTAL AND RESIDUAL DISABILITY BENEFIT RIDER

We will pay an added benefit during Your continuous Disability if:

1.  Such Disability starts prior to age 65; and
2.  The Total or Residual Disability benefit is payable under the Policy to which this rider is added; and
3.  The Disability continues more than 365 days.

This benefit will start on the 366th day of the Disability. This benefit will be paid monthly. The amount We will pay starts at 7 percent of the Base Amount. The Base Amount is the monthly amount of the Total or Residual Disability benefit payable under Your Policy. The Base Amount shall also include any benefit payable under a Supplemental Social Insurance Benefit Rider added to Your Policy. We will later add 7 percent of the Base Amount to the monthly amount of this benefit. We will do this on each anniversary of Your Disability, after the first, while it continues.

No more increases will be made after the first premium due date after Your 65th birthday. But if the Disability starts after Your 63rd birthday, this benefit will pay a monthly amount up to 14 percent of the Base Amount.

We will pay this benefit while the Total or Residual Disability benefit continues to be payable.

This rider will end:

1.  When the Policy ends; or
2.  On the first premium due date after Your 65th birthday;

whichever happens first.

All definitions in Your Policy apply to this rider. All provisions of Your Policy stay the same except where We change them by this rider.

The annual premium for this rider is shown on the Policy Schedule.

The Date of Issue of this rider is the same as that of the Policy. But if We issued this rider after the Policy, the Date of Issue is shown below.

Signed for Us at Worcester, Massachusetts.

THE PAUL REVERE LIFE INSURANCE COMPANY

*John H. Budd*                    *Aubrey K. Reid Jr.*

       Secretary                                      President

**AMENDMENT TO POLICY**

This amendment deletes the definition of "Prior Earnings" in the Policy to which it is added. It adds:

1. The following definitions; and
2. A new section, RETURN TO WORK BENEFIT.

**DEFINITIONS**

"Prior Earnings" means the greater of:

a. Your average Monthly Earnings for the six calendar months just before Your Disability began; or
b. Your highest average Monthly Earnings for any two successive years during the five-year period just before Your Disability began.

Starting as of the first Review Date, We will make an inflation adjustment to Your Prior Earnings. We will multiply Your Prior Earnings by the CPI Factor. The result will be used until the next Review Date to compute Residual Disability benefit amounts payable. However, the inflation adjustment increase will be at least 7% of Your Prior Earnings amount.

The inflation adjustment will not apply once the Disability ends. But it will apply to recurrent Disability deemed continuous under the Recurrent Disability section of Your Policy.

"CPI" means the Consumer Price Index for All Urban Consumers. It is published by the United States Department of Labor. If this index is discontinued or if the method for computing it is materially changed, We may choose another index. We will choose an index which in our opinion would most accurately reflect the rate of change in the cost of living in the United States. CPI will then mean the index We chose.

"Review Date" means the date that occurs:

1. After each successive twelve-month period of continuous Disability; and
2. While Your Disability continues.

No Review Date will occur on or after Your 65th birthday.

"Index Month" means the calendar month four months prior to the calendar month in which a Review Date occurs. But the first Index Month for any Disability will be the calendar month four months prior to the month in which Your Disability began.

"CPI Change" means the result of a computation We will make as of each Review Date. We will divide the CPI for the most recent Index Month by the CPI for the Index Month prior to the most recent Index Month.

"CPI Factor" means the result of the CPI Change as of the current Review Date multiplied by the CPI Change for each prior Review Date occurring since the Disability began. The CPI Factor as of the first Review Date will equal the CPI Change as of that Review Date. A CPI Factor is determined as of each Review Date while Disability continues.

**RETURN TO WORK BENEFIT**

This benefit will be payable when:

1. You engage in any occupation following right after a Disability for which benefits are payable; and
2. You incur a Loss of Earnings.

A Loss of Earnings means:

1. Your Monthly Earnings from any occupation are reduced to 80% or less of Your Prior Earnings; and
2. Such reduction of earnings is due to Injury or Sickness.

The monthly amount of this benefit equals:

$$\frac{A - B}{A} \times \text{RATE OF MONTHLY INDEMNITY}$$

"A" Is Your Prior Earnings
"B" is Your Monthly Earnings for the month for which the benefit is claimed
"RATE OF MONTHLY INDEMNITY" Is shown on the Policy Schedule.

This Benefit will continue to be payable while You continue to incur a Loss of Earnings. This benefit will not be payable:

1. For more than 4 months for any Disability; or
2. Beyond the end of the Maximum Benefit Period.

whichever first occurs.

If this benefit is payable for a period for which any other benefit is payable under Your Policy:

1. We will pay only one benefit for that period; and
2. The benefit We pay will be the larger of the benefits payable.

The provision of Your Policy titled Waiver of Premium will apply to any period for which this benefit is payable.

**GENERAL**

All provisions of Your Policy remain the same except where changed by this amendment.

The Date of Issue of this amendment is the same as that of Your Policy. If We issued this amendment after Your Policy, the Date of Issue is shown below.

Signed for Us at Worcester, Massachusetts.

THE PAUL REVERE LIFE INSURANCE COMPANY

*John H. Budd*          *Aubrey K. Reid Jr.*

Secretary                              President

## AMENDMENT TO POLICY

This Amendment changes the Policy to which it is attached.

The following language is deleted from the section entitled, "**EXCLUSIONS**":

> "Normal pregnancy or childbirth. But We will cover complications of either of these."

The Date of Issue of this rider is the same as that of Your Policy. If We issued this rider after Your Policy, the Date of Issue is shown below.

Signed for us at Worcester, Massachusetts.

THE PAUL REVERE LIFE INSURANCE COMPANY

*John H. Budd*                     *Aubrey K. Reid Jr.*

Secretary                                 President

A&S 645 S-84                                                                 84-5

| THE PAUL REVERE LIFE INSURANCE COMPANY | THE PAUL REVERE PROTECTIVE LIFE INSURANCE COMPANY | THE PAUL REVERE VARIABLE ANNUITY INSURANCE COMPANY |
|---|---|---|
| For ☐ Life ☒ Health Insurance | For ☒ Life ☐ Health Insurance | For ☐ Life ☐ Health Insurance |

# PART I:  A  PROPOSED INSURED

Nº .78958

**1.** Print Name as it is to appear on policy. Include professional designation.

Last: G O O D M A N
First and Middle: J A C K  A  M D

**2.** Sex: M ☒  F ☐    **3.** Birthdate: Mo _10_ Day _31_ Yr _55_    **4.** Age (nearest) ~~29~~ 30

**5.** Birthplace (State) _Tn._    **6.** Social Security Number

**7.** Residence: Street _256 Pine St._ _____ Apt #
City _Memphis_ State _Tn._ Zip _38104_ Phone No (_901_) _278-1783_

Give prior address if at above address less than 2 years.
Street _~~"~~_ _____ Apt #
City _____ State _____

## B  PROPOSED INSURED'S OCCUPATION

**1.** Occupation _MD - Physician_ _____ % Traveling ____ % Supervision ____

**2.** Exact duties _Anesthesiology_

**3.** Employer _Self_

**4.** Business Address: Street _~~OM~~ 5100 Poplar_ City _Memphis_
State _Tn._ Zip _38137_ Phone No (_901_) _683-2471_

**5.** Nature of Employer's business _Private Practice Anesthesiology_

**6.** Length of current employment _4 ~~sut~~ mos._ ~~3 yr. mosts.~~   **7.** If self-employed, number of full-time employees _- 0 -_

**8.** Do you have any part-time or other full-time jobs, or any additional duties?  Yes ☐  No ☒  If "Yes", describe:
_____

## C  FAMILY MEMBERS TO BE COVERED AND PREMIUM PAYER FOR WHOM INSURANCE IS APPLIED

| Full name and relationship | Birthdate | Hgt | Wgt | Full name and relationship | Birthdate | Hgt | Wgt |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

## D  ADDITIONAL INFORMATION

Any person refers to the Proposed Insured, any Family Member or Premium Payer listed in Section C above.

**1.** Has any person within the past two years engaged in: motorcycle riding, scuba diving below 40 feet, parachuting, karate, judo, gliding, motor vehicle or motorboat racing, rodeo activities, or any similar sport or avocation?
Yes ☐  No ☒  If "Yes", give details below.

**2.** Has any person ever piloted a plane or have any intention of piloting a plane within the next six months?
Yes ☒  No ☐  If "Yes", forward Aviation Supplement. _Attached_

**3.** Has any person received, requested, or been refused disability, hospital, or medical benefits or a pension for any sickness or injury within the past five years?   Yes ☐  No ☒   If "Yes", give details below.

**4.** Has any person had life, disability or hospital insurance rated up, modified, rejected, cancelled, or renewal or reinstatement not approved within the past five years?   Yes ☐  No ☒   If "Yes", give details below.

**5.** Has the Proposed Insured smoked cigarettes in the past 24 months?   Yes ☐  No ☒

**6.** Has any person within the past two years been convicted of a moving violation, or had a license restricted or revoked?   Yes ☐  No ☒   If "Yes", show Driver's License Number _____ and give details below.
_____
_____
_____

App 50

80-1

**PART I** (continued) **:**   **If applying for Health Insurance, complete Sections F through H.**

## F EXISTING AND PENDING HEALTH COVERAGE

1. Describe all coverage in force. Include disability, hospital, and overhead expense coverage under individual, franchise, association, group, and government plans. If none, write "none".

| | Company or Source | Issue Date | Amount of ADB | Amount of Hosp | Amount of BOE | Monthly Indemnity | Elim Pd | Ben Pd | To be Cont Yes | To be Cont No | Effec Date of Discont |
|---|---|---|---|---|---|---|---|---|---|---|---|
| a. | Wife's Group (unknown) | | | ✓ | | | | | ☑ | ☐ | |
| b. | Paul Revere | 3/3/84 | | | | 2200 | 30 | L/L | ☑ | ☑ | make over |
| c. | | | | | | | | | ☐ | ☐ | |
| d. | | | | | | | | | ☐ | ☐ | |
| e. | | | | | | | | | ☐ | ☐ | |

2. Has Proposed Insured applied for health insurance within the past six months with any other company? Yes ☐  No ☑  If "Yes", give details in F-1 above.

3. Is Proposed Insured eligible for:   State Cash Sickness?   Yes ☐  No ☑   Worker's Compensation?   Yes ☐  No ☑

4. Is policy applied for intended to replace or change any existing insurance?   Yes ☐  No ☑   If "Yes", give details in F-1 above. Forward appropriate replacement forms, if required.

## G HEALTH COVERAGE APPLIED FOR

1. List below any coverage with Paul Revere to continue, be made over, or lapsed. (Use abbrev.—Cont , M/O, or Lapse)

Pol # 0102125353044 M/O

| Policy(ies) Applied For | Form # | | Basic Indemnity | Additional Indemnity | Additional Indemnity | SSII Form # 762 |
|---|---|---|---|---|---|---|
| Disability Income | 941 | Indemnity | $4,0006,000 | $1,000 | $ | $1,000 |
| | | Elim Period | 30 | 30 | | 365 |
| non-smoker | | Ben Period | A 65 S 65 | A 365 S 365 | A    S | A 65 S 65 |
| | | Qual Period | -0- | | | |
| Overhead Expense | | Indemnity | $ | | | |
| | | Elim Period | | | | |
| | | Ben Period | | | | |
| Hospital Income | | Indemnity | $ | | | |

3. Additional Benefits Applied For

| Form # | Benefit Name | Amount | Form # | Benefit Name | Amount | Form # | Benefit Name | Amount |
|---|---|---|---|---|---|---|---|---|
| 766 | FIO | 7x500 | 779 | Own Occ | All | 771 | Life/Life | All |
| 788 | Own OCC OLA | All | 769 784 | Loss Use | All | | | |

## H FINANCIAL INFORMATION

Earned income is the total of your annual salary or wages, commissions, fees, or earned income, reduced by your regular business expenses, but before all other deductions. * Billing 20,000 mo. - see records

1. My earned income: At the current annual rate is $180-240,000  For prior year was $ 35,000.

2. Do you have a salary continuation program? Yes ☐  No ☑  How much? $_____  How long?_____

3. Does your unearned income exceed $5,000 per year?   Yes ☐  No ☑   If "Yes", give sources and amounts.

4. My net worth (assets minus liab.   s) if more than $500,000 is $_____

**If applying for Life Insurance or Health ADB, complete Section L.**

## L BENEFICIARIES

| Principal(s)      (Print full name) | | Relationship | Birthdate |
|---|---|---|---|
| Roseanne B. Goodman | equally, or survivor(s) , if any | Wife | 3/28/55 |
| Contingent(s) | | Relationship | Birthdate |
| | equally, or survivor(s) , if any | | |

## M PREMIUM INFORMATION

1. If either of the following questions is answered "Yes" or left blank, no agent or broker is authorized to accept money and no Receipt and Conditional Insuring Agreement shall be given. *Has any person proposed for coverage:*

   a. Within the past two years been treated for heart trouble, stroke or cancer (other than of the skin), or had such treatment recommended?   **Yes** ☐   **No** ☒

   b. Within the past 90 days been admitted to a hospital or other medical facility, or been advised to be admitted?   **Yes** ☐   **No** ☒

2. If collected, this Initial Deposit is in exchange for Receipt and Conditional Insuring Agreement: (Check at least one) *Collected:* ☒ $ 75⁰⁰ for proposed life insurance ☐ $ 425⁰⁰ for proposed health insurance ☐ None.

3. Paid by: Proposed Insured ☒ Employer ☐ Other _____   Notices to: Residence ☒ Business ☐

4. Check Pay Method/Mode ➡

| | Ann | S A | Qtr | Mo | 5. if Pre-Auth Check *circle* deposit date | 6. List other PAC Pol #s |
|---|---|---|---|---|---|---|
| ☐ Regular Premium Notice | | | See Rate Book | | 1st   10th   (15th) | # 0102125350# ____ |
| ☐ ESP (Case #          ) | | | | | 20th   28th | # ____   # ____ |
| ☒ Pre-Authorized Check | | | | ✓ | | # ____   # ____ |

## N CORRECTIONS AND AMENDMENTS (For Home Office Use Only)

**It is understood and agreed as follows:**

(1) I have read the statements and answers recorded in Parts 1 and 2 above. They are, to the best of my knowledge and belief, true and complete and correctly recorded. They will become part of this Application and any policy(ies) issued on it.

(2) I will discontinue any policy(ies) shown to be discontinued in answer to questions F-1 and I-1 of Part 1 on or before the date(s) indicated. The Company will rely on such answers in determining the amount, if any, of insurance it will issue.

(3) No agent or broker has authority to waive the answer to any question, to determine insurability, to waive any of the Company's rights or requirements, or to make or alter any contract or policy.

(4) The Company has the right to require medical exams and tests to determine insurability.

(5) The insurance applied for will not take effect unless the issuance and delivery of the policy and payment of the first premium occur while the health of the Proposed Insured and any other person to be insured under the policy remains as stated in the Application. The only exception to this is provided in the Receipt and Conditional Insuring Agreement detached herefrom and issued if the premium is paid in advance, in accordance with section M above.

(6) The Company is authorized to obtain an investigative consumer report on me.

(7) Acceptance by the Proposed Owner of any policy issued on this Application will ratify any changes listed under "Corrections and Amendments".

Signed at _Memphis Tn._   Date 05-03 19 85

I certify that I have truly and accurately recorded on this Application the information supplied by the Applicant. To the best of my knowledge, replacement of existing life insurance or annuities ☐ is ☒ is not involved. I have listed all such policies in question 3 of Part 1.

X _____ Proposed Insured

X _____ Spouse (required for family plans)

X _____

☐ Premium Payer, or ☐ Proposed Owner, or ☐ Applicant (if other than Proposed Insured or if Proposed Insured is under age 15)

Witness _____ Agent or Broker

MEDICAL APPLICATION                                                                 WORCESTER, MA 01608

**PART 2**   THE PAUL REVERE LIFE          THE PAUL REVERE PROTECTIVE          THE PAUL REVERE VARIABLE
            INSURANCE COMPANY              LIFE INSURANCE COMPANY              ANNUITY INSURANCE COMPANY

| 1. NAME | | | 2. Birthdate | 3. Birthplace |
|---|---|---|---|---|
| Last | G O O D M A N | | 10 - 31 - 55 | TN. |
| First / Middle | J A C K | A. | Mo / Day / Yr | (State) |

4. Residence: Street **256 Pine St.**    Apt # _____   5. Occupation **Anesthesiologist**
   City **Memphis**    State **TN.**    Zip **38104**    Duties **Anesthesia**

6. Name(s) and address(es) of personal physician(s) or health care facility(ies). If none, write "none".

_____ *NONE* _____

7. Date and reason for last consultation. _____

8. Is Proposed Insured presently under observation or treatment or taking medication?   Yes ☐   No ☒   If "Yes", give details.

| 9. Family History | Age if Living | Age at Death | Cause of Death |
|---|---|---|---|
| Father | 60 | | |
| Mother | 55 | | |
| Brothers & Sisters | 2  28+26  0 | | |

10. Has any family member ever had a stroke or diabetes, cancer, high blood pressure, heart or kidney disease, mental illness, or committed suicide?   Yes ☐   No ☒
If "Yes", give details.

_____

| | | Yes | No | Details of "Yes" answers. Identify question number. Circle applicable items. Include diagnosis, dates, duration and current status. List names and addresses of all attending physicians and medical facilities. |
|---|---|---|---|---|
| 11. | Have you, *within the past 5 years:* | | | |
| a. | Been examined by or consulted a physician or other practitioner? | ☒ | ☐ | 11a. Giardiasis 1981. Treated with med. Was not hosp. No Reoccurrence. Dr. Larry Wruble |
| b. | Been under observation or treatment in any hospital, sanitarium, or institution? | ☐ | ☒ | |
| c. | Had an X-ray, EKG, (blood) or urine test, or other lab tests? | ☒ | ☐ | 11c. Routine blood work for employment 1984. Normal Results. Methodist Hosp. 1265 Union Memphis, TN. |
| 12. | Have you *ever:* | | | |
| a. | Except as legally prescribed by a physician, used: cocaine, barbiturates, heroin, or any narcotic drug? | ☐ | ☒ | |
| b. | Sought or received advice for, or treatment of, or been arrested for the use of alcohol, marijuana or drugs? | ☐ | ☒ | |
| c. | Been rejected for or given medical discharge from military, naval, or air service? | ☐ | ☒ | |
| 13. | Are you pregnant? If "Yes", what is due date? | ☒ | ☒ | |
| 14. | Has your weight changed *within the past year?* | ☐ | ☒ | |

| | Yes | No | Details of ''Yes'' answers. Identify question number. Circle applicable items. Include diagnosis, dates, duration and current status. List names and addresses of all attending physicians and medical facilities. |
|---|---|---|---|
| **15.** Have you *ever* had any known indication of or been treated for: | | | |
| a. Any disease or impairment of eyes, ears, nose or speech? | ☐ | ☒ | |
| b. Any type of back or spinal trouble, including sprain or strain? | ☐ | ☒ | |
| c. Chest pain, heart murmur, high blood pressure, or any disease of the heart, blood vessels, or blood? | ☐ | ☒ | |
| d. Peptic ulcer, indigestion, or any disease of the stomach, intestines, gall bladder, or liver? | ☐ | ☒ | |
| e. Tuberculosis, asthma, pleurisy, or any disease of the chest or lungs? | ☐ | ☒ | |
| f. Kidney stone, albumin, pus, blood or sugar in urine, or any disease of the kidneys, bladder, or genital organs? | ☐ | ☒ | |
| g. Headaches, fainting spells, epilepsy, paralysis, nervousness, mental disorder, or any disease of the brain or nervous system? | ☐ | ☒ | |
| h. Rheumatic fever, syphilis, gout, arthritis, thyroid disease, diabetes, cancer, or tumor? | ☐ | ☒ | |
| i. Allergies or any disease of the skin? | ☐ | ☒ | |
| j. Any disease of the reproductive organs or breast? | ☐ | ☒ | |
| k. Any amputation or deformity, hernia or rupture, hemorrhoids or varicose veins? | ☐ | ☒ | |
| **16.** Have you had any surgical operation, treatment, special diet, or any illness, ailment, abnormality, or injury, not mentioned above, *within the past five years?* | ☐ | ☒ | |

I have read the statements and answers made above. They are, to the best of my knowledge and belief, true and complete and correctly recorded. I understand that they will become a part of my application for insurance and any policy issued on it.

Signed at  *Memphis Tenn.*                    Date  *5/6*                 19 *85*

Witness  *Carolyn Sue Sides*           X  _____
                                            Person Examined

### COMPLETE IN ALL CASES — AUTHORIZATION FOR INFORMATION

I hereby authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically-related facility, insurance company, MIB, Inc. or other organization, institution or person, that has any records or knowledge of me or my health, to give to The Paul Revere Life Insurance Co., The Paul Revere Protective Life Insurance Co., The Paul Revere Variable Annuity Insurance Co., and/or their reinsurers any such information. To facilitate rapid submission of such information, I authorize all said sources, except MIB, Inc., to give such records or knowledge to Equifax Services, The Hooper-Holmes Bureau, or American Service Bureau. A photostat of this authorization shall be as valid as the original.

_____ *May 6, 1985* _____          X  _____
           Date                               Signature of Proposed Insured

App 51                                                                              80-1



IN THE CHANCERY COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH DISTRICT AT MEMPHIS

JACK GOODMAN, M.D.,

    Plaintiff,

v.

    Case No. CH-09-0434-1

UNUM GROUP, d/b/a Paul Revere Life Insurance
Company, also d/b/a UnumProvident Corporation,
also d/b/a Provident Life and Accident Insurance
Company,

    Defendant.

---

## PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS
## FOR PRODUCTION OF DOCUMENTS AND THINGS

COMES NOW the Plaintiff, by and through the undersigned attorney of record and pursuant to Tennessee Rules of Civil Procedure 33 and 34, and propounds the following Interrogatories and Requests for Production of Documents to the Defendant Unum Group [hereinafter Unum or Defendant] to be answered separately and fully under oath within the time prescribed by the Tennessee Rules of Civil Procedure.

Said Interrogatories and Requests for Production of Documents are directed to Unum but include inquiry regarding information within the knowledge of Unum, its agents, or anyone else acting on its behalf. Further, said Interrogatories and Requests for Production of Documents are to be considered continuing requiring the supplementation of an answer in the event new information

1

is obtained by Unum, its attorney, agents or any other person acting on its behalf, subsequent to the time that Unum's original answers are served upon the Plaintiff. If the whole answer to a question is not known, so state, and answer the part known.

## DEFINITIONS

As used in these Interrogatories and Requests for Production of Documents served herewith, the following definitions and instructions shall apply:

1.    As used herein, the terms "you," "your," or "yourself" refer to the Defendant, and each agent, representative, attorney, or other person acting or purporting to act for said Defendant including all persons hired or retained to defend this case by Plaintiff's uninsured/underinsured motorist carrier.

2.    "Identify" as used herein to refer to a document means to state the nature of the document (e.g. "letter, memorandum to file," etc.), date, author, addressee, title or caption, subject matter, meaningful summary of the contents and the present custodian. Attaching a copy of the document in question to the response to these Interrogatories (properly indexed to the interrogatory) will suffice in lieu of further identification.

3.    As used herein, the term "communication" means any oral or written utterance, notation, or statement of any nature whatsoever, by and to whomever made, including but not limited to, correspondence, conversations, dialogues, discussions, interviews, consultations, agreements, and other understandings between or among two or more persons, by any means or mode of conveying information, including but not limited to telephone, facsimile, e-mail, any broadcast media or any other form, whether written or spoken.

4.    The term "document(s)" is used in these requests in its most broad and liberal sense

2

and means written, typed, printed, recorded or graphic matter, however produced or reproduced, of any kind and description, and whether an original, master, duplicate or copy, including, but not limited to, papers, notes, accounts, books, advertisements, catalogs, manuals, publications, correspondence, computer printouts, cablegrams, mailgrams, telegrams, memoranda, letters, communications, medical records, prescription records, logs, policies, procedures, including inter-office, and intra-office communications, reports, studies, analyses, pamphlets, calculations, projections, contracts, charts, plans, specifications, drawings, photographs, plats, sketches, schedules, surveys, agreements, working papers, corporate records, minutes of board of directors or committee meetings, books of account, ledger books, notebooks, vouchers, bank checks, cashier's checks, receipts for cashier's checks, canceled checks, check stubs, bill receipts, invoices, desk calendars, appointment books, diaries, diary entries and notes, minutes, transcriptions, sound or video recordings of any type of personal or telephone conversations or of negotiations, meetings or conferences, or things similar to any of the foregoing and all other papers, writings or physical things containing information, including preliminary drafts of or marginal notes appearing on any document, however denominated or described by the parties to whom the particular request is directed. Each document shall be designated as an original, a duplicate, or a copy thereof.

5.     If you claim any document is protected by a privilege of any description, list each document, including the date it was sent or received, the person(s) who wrote or sent the document, the person(s) to whom it was sent or received, and describe its contents.

6.     The term "any" shall be deemed to include and encompass the words "each" and "all."

7.     As used herein, the word "or" appearing in an interrogatory should not be read so as

3

to eliminate any part of the request, but, wherever applicable, it should have the same meaning as the word "and."

8.    With regard to the terms defined herein, all terms used in the singular shall include the plural and all terms used in the plural shall include the singular.

9.    If you rely upon the attorney-client privilege or any other privilege as a ground for objection to production of any document called for in these discovery requests, please state for each such document which you refuse to produce:

    a.    the name and address of the author of the document;

    b.    the name and address of any person to whom the document was sent or to whom copies were sent or circulated at any time;

    c.    the name and address of any person currently possessing the document or a copy thereof;

    d.    a brief description of the nature and subject matter of the document (i.e., letter, memorandum, invoice, contract);

    e.    the nature of the privilege claimed.

10.    If any document requested has been lost or destroyed since its creation, identify that document, state when, where, how and by whom the document was destroyed and state the name of the person who has had custody of the document.

## INTERROGATORIES

**INTERROGATORY NO. 1:**    State the name, address, telephone number, present employer, and job classification or position of each and every person assisting in the preparation of the answers to these interrogatories; identifying the Answers, or portions of Answers, for which (s)he is responsible or which (s)he assisted in preparing.

4

**ANSWER:**

**INTERROGATORY NO. 2:**       With regard to the claim for disability benefits

submitted by Plaintiff Jack Goodman, state:

(a) The date you first received such a claim;

(b) If you now take the position, or have ever taken the position, that no coverage is afforded under your policy for this claim, please state the basis for each denial;

(c) List and identify each and every document, recording, e-mail, telephonic memorandum, note, or other document of any nature whatsoever which you have in your possession concerning Plaintiff's claim for disability benefits, and for each such document state:

(1) the title of the document;

(2) the author of the document;

(3) the date of the document; and

(4) the person who is the custodian of such document and that person's address and telephone number.

**ANSWER:**

**INTERROGATORY NO. 3:**       With respect to all policies providing disability and

residual disability coverage to the Plaintiff and issued by Unum to the Plaintiff which is at issue in

this lawsuit, state:

(a) the inception and expiration dates of said policy;

(b) the amount of monthly benefits due at the time the Plaintiff's benefits were terminated, and

(c) list any and all provisions contained in the policy which you contend limit the disability or residual disability benefits available to the Plaintiff.

**ANSWER:**

**INTERROGATORY NO. 4:**       At the time of the termination of benefits at issue in this

5

lawsuit, did your company have any policies or rules pertaining to adjusting or investigating disability or residual disability benefits provided in your policy? If you did, state:

    (a)   what the policy was and the rules in detail;

    (b)   whether that policy and those rules were in force at time of the termination of benefits at issue, and how long prior to the termination of benefits they were in effect;

    (c)   whether the policy or rules were incorporated in a claims manual distributed to your personnel involved in the investigation and adjustment of claims;

    (d)   if such a manual was in existence, the name of the document, the year of its publication, the names and positions of the persons who presently have a copy, and whether each of said persons was employed by you at the time Plaintiff's benefits were terminated.

**ANSWER:**

**INTERROGATORY NO. 5:**    At the time of the termination of benefits at issue, what instructions had been given to officers, employees, agents, and attorneys, or any other persons involved in the investigation or adjusting of disability or residual disability claims, or had been provided in policies issued by Unum, with respect to investigating claims, adjusting claims, and terminating claims.

**ANSWER:**

**INTERROGATORY NO. 6:**    State how long the instructions referred to in your Answer to the preceding Interrogatory had been in effect prior to the termination of benefits at issue and how long they continued in effect after you terminated Dr. Goodman's residual disability benefits.

**ANSWER:**

**INTERROGATORY NO. 7:**    State the names of all adjusters, claims personnel,

6

physicians, claims managers, attorneys, or other personnel at any time employed or hired by you to handle, or participate in, investigation or settlement of Plaintiff's claims for disability and/or residual disability benefits under the policy issued by Unum. With respect to each such person, state:

    (a)    the capacity in which (s)he was employed or hired;

    (b)    the period of time (s)he was so employed or hired;

    (c)    whether (s)he is presently employed by you and in what capacity;

    (d)    his or her present or last known address; and

    (e)    his or her present or last known employer.

**ANSWER:**

**INTERROGATORY NO. 8:**    With reference to Plaintiff's claim for disability and/or residual disability benefits, did any of your officers, employees, attorneys, or other agents involved in the handling of the claim receive any instructions from you that the benefits were to be terminated? If they did, state:

    (a)    the date or dates on which such instructions were given;

    (b)    by whom such instructions were given;

    (c)    to whom such instructions were given;

    (d)    whether such instructions were given orally or in writing;

    (e)    if given orally, were any memoranda or record of any kind made of such instructions; and

    (f)    if memoranda or records were made, the name and address of their present custodian.

**ANSWER:**

**INTERROGATORY NO. 9:**    Please provide the terms of the Unum Provident

7

Multistate Examination and Settlement that was reached with the Tennessee Department of Commerce and Insurance in 2008, including the portions that pertain to the adjustment, investigation and payment of disability and residual disability claims.

**ANSWER:**

**INTERROGATORY NO. 10:**    Within the last five years, have you been charged with negligently or in bad faith failing to pay disability or residual disability benefits? If so, state the name and address of every attorney or insured alleging you negligently or in bad faith failed to pay disability or residual disability benefits.

**ANSWER:**

**INTERROGATORY NO. 11:**    With respect to each claim referred to in your Answer to the preceding Interrogatory, state:

    (a)    whether litigation was commenced against you based on your failure to pay disability or residual disability benefits;

    (b)    the name of the court wherein such litigation was commenced and the number and caption of the case; and

    (c)    the disposition of the litigation regardless of whether suit was filed.

**ANSWER:**

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**   Please produce a copy of each and every document or thing which supports, substantiates, supplements, refutes or describes any of your responses to the preceding Interrogatories.

**ANSWER:**

8

**REQUEST NO. 2:**     Please produce, in its entirety, the Unum claims file, the Unum underwriting file, any other file and/or documents maintained or in the possession of Unum's agents regarding the disability or residual disability claim at issue, as well as any and all other documents in Defendant's possession or control, or in the possession or control of its agents, employees and/or attorneys, relating to the disability insurance policy issued to the Plaintiff and which is the subject matter of this litigation

**RESPONSE:**

**REQUEST NO. 3:**     If you claim that any of the above requested documents are privileged and therefore not subject to production, with respect to each such document, state:

(a)     The exact nature of the privilege claimed;

(b)     The nature of the document withheld under the alleged privilege (correspondence, memoranda, recording, etc.);

(c)     The identity of the party who authored the document and the party who received it; and

(d)     Generally summarize the contents of the allegedly privileged document.

**RESPONSE:**

**REQUEST NO. 4:**     Please produce a copy of each and every document in the possession or control of Unum relating to the claims made by Plaintiff and Unum's evaluation of the claims made by Plaintiff.

**RESPONSE:**

**REQUEST NO. 5:**     Please produce a copy of all policies, rules, guidelines, regulations and handbooks utilized by Unum and its agents and employees which deal in any respect with the

9

**REQUEST NO. 6:**   Please produce a copy of the Unum Provident Multistate Examination and Settlement reached with the Tennessee Department of Commerce and Insurance.

**RESPONSE:**

Respectfully Submitted,

R. Sadler Bailey (#11230)
Thomas R. Greer (#024452)
Bailey & Benfield, PLLC
Attorneys for Plaintiff
6256 Poplar Avenue
Memphis, Tennessee 38119
(901) 680-9777

10

1159

IN THE CHANCERY COURT OF SHELBY COUNTY
FOR THE THIRTIETH DISTRICT AT MEMPHIS

SHELBY COUNTY
CHANCERY COURT
APR 0 1 2009
DEWUN R. SETTLE, C & M
TIME:_____ BY:_____

JACK GOODMAN, M.D.,

    Plaintiff,

v.                                                    Case No. CH-09-0434-1

UNUM GROUP, d/b/a Paul Revere Life Insurance
Company, also d/b/a UnumProvident Corporation,
also d/b/a Provident Life and Accident Insurance
Company, and The Paul Revere Life Insurance Company,

    Defendants.

---

### AMENDED COMPLAINT FOR DECLARATORY JUDGMENT
### AND MONEY DAMAGES

---

      TO THE HONORABLE CHANCELLORS OF THE THIRTIETH JUDICIAL DISTRICT
AT MEMPHIS:

      The Plaintiff, Dr. Jack Goodman, files his Amended Complaint for Money Damages against

Unum Provident Corporation [hereinafter "UNUM"] and The Paul Revere Life Insurance Company

[hereinafter "PRL"] and for his causes of action, states:

### PARTIES

      1.    Plaintiff Jack Goodman, M.D. is an adult resident citizen of Shelby County,

Tennessee, and an anesthesiologist licensed to practice medicine in Shelby County, Tennessee.

      2.    Defendant Unum Provident [UNUM] is an insurance company organized and existing

under the laws of the State of Tennessee. UNUM is a Tennessee corporation with corporate offices

1

in Chattanooga, Tennessee, at 1 Fountain Square, Chattanooga, Tennessee 37402. Defendant Unum operates insurance companies through the use of employees, agents, and/or contractors who perform services within the course and scope of their employment, apparent authority, agency or contract to act for Defendants UNUM and PRL. Defendant UNUM is liable for its own acts and the acts and omissions of its servants, employees, agents, and contractors, including PRL, by virtue of the doctrines of agency, apparent agency, implied agency, employer/employee relations, joint and several liability, joint venture, alter ego, respondeat superior, vicarious liability, and contract, and as a result of violating its non-delegable duties to deal with its insured in good faith and within the state and federal regulatory schemes applicable to insurance companies.

3.     Defendant The Paul Revere Life Insurance Company [hereinafter "PRL"], is a Massachusetts corporation licensed to market and sell disability insurance policies in the State of Tennessee. Defendant PRL is a subsidiary of Defendant UNUM, which is a Tennessee corporation with offices in Chattanooga, Tennessee at 1 Fountain Square, Chattanooga, Tennessee 37402. Defendant PRL operates insurance companies through the use of employees, agents, and/or contractors who perform services within the course and scope of their employment, apparent authority, agency or contract to act for Defendants UNUM and PRL. Defendant PRL is liable for its own acts and the acts and omissions of its servants, employees, agents, and contractors, including UNUM, by virtue of the doctrines of agency, apparent agency, implied agency, employer/employee relations, joint and several liability, joint venture, alter ego, respondeat superior, vicarious liability, and contract, and as a result of violating its non-delegable duty to deal with its insured in good faith and within the state and federal regulatory schemes applicable to insurance companies

4.     All of the wrongs complained of herein occurred within this jurisdiction and within

2

the applicable statute of limitations and this Court has jurisdiction.

## FACTS

5.    In June of 1985, Dr. Goodman purchased a disability insurance policy, called a "Preferred Professional Policy" from PRL. This contract for disability insurance was entered into in Memphis, Shelby County, Tennessee, and is attached to this Complaint as Exhibit A, pursuant to Tenn. R. Civ. P. 10.3.

6.    The disability policy provides that PRL will pay a Residual Disability benefit in the event that Dr. Goodman, because of injury or sickness:

    a.    (1) becomes unable to perform one or more of the important duties of his regular occupation; or

        (2) becomes unable to perform the important duties of his regular occupation for more than 80% of the time normally required to perform them; and

    b.    is engaged in his regular occupation or another occupation and his monthly earnings are reduced to 80% or less of his prior earnings; and

    c.    is under the regular and personal care of a physician.

The policy also required that, to receive the residual disability benefit, Dr. Goodman's residual disability must follow after a period of Total Disability that lasts at least as long as the Qualification Period, if any. This policy was in effect during all times material to the actions that are the subject of this Complaint.

7.    Dr. Goodman added coverage to the policy, by purchasing an additional rider in 1991. The maximum monthly benefit for total disability under the new rider is $8,000.00, plus a $1,000.00 cost of living allowance.  The cost of living additions to Dr. Goodman's monthly residual disability

3

benefits increase annually under the terms of the policy.

8.     In 1992, Dr. Goodman injured his back and took time off work for his injury.  He attempted to return to work, but eventually remained off work for enough time to qualify for disability benefits under his policy, and filed for total disability benefits in March 1993.  In that application, Dr. Goodman enclosed an attending physician statement from Dr. Edward Pratt that notes Dr. Goodman's diagnosis as Lumbar Radicular Syndrome.  Dr. Pratt reported Dr. Goodman had symptoms of back and leg pain, lower back spasms and a decreased range of motion.  Dr. Pratt noted Dr. Goodman's limitations were "unable to work."

9.     On April 5, 1993, Dr. Goodman returned to work in a limited capacity and found an administrative job supervising nurse anesthetists at Crittenden County Hospital.  Dr. Goodman still received benefits under his COLA (cost of living) provisions in his policy, even though sometimes his income from the supervisory job was high enough that he did not receive disability payments.  His attending physician issued another statement that noted that Dr. Goodman had returned to work in a limited capacity, with "no lifting, bending, etc. (un)til able."

10.    On April 13, 1993, the Defendants issued Dr. Goodman's first benefit payment for $5,700.00.  Dr. Goodman's claim has since been paid to March 1, 2008.  His last payment, which included cost of living allowances, amounted to $17,820.00 and would increase according to the cost of living provisions in the policy on the anniversary of his disability.

11.    Dr. Goodman continued to work at the Crittenden County Hospital until January 31, 2006, when his contract with the hospital was cancelled because the job requirements changed and his supervisory position became too strenuous to perform with a back injury.  After being released from this contract, Dr. Goodman looked for work within his abilities, considered retraining, and

4

found intermittent part time work at other locations supervising nurse anesthetists. In January of 2009 Dr. Goodman started a new part-time, contractual, supervisory position with Baptist Memorial Hospital in Memphis, again supervising nurse anesthetists and performing occasional anesthesiologist duties. The supervisory position at Baptist, like his previous position at Crittenden Hospital, does not pay as well as his previous employment as a practicing anesthesiologist, and is not full-time work.

      12.    At this time, Dr. Goodman is under the care of his primary care physician, Dr. Cary Finn. Dr. Finn is an internal medicine specialist who monitors Dr. Goodman's pain management prescriptions and has provided the Defendant with periodic reports on Dr. Goodman's condition, in accordance with the policy terms. Dr. Goodman is able to work at his supervisory position and live a fairly normal life with pain management drugs and physical accommodations, including daily stretching exercises, lifts and self-imposed physical limitations.

      13.    Sometime after 2007, one of the Defendants' employees conducted a review of Dr. Goodman's file. Dr. Goodman was first told by a UNUM claims manager that a "vocational expert" was reviewing his file. Dr. Goodman specifically asked what was the level of education and/or expertise of the "expert" and UNUM refused to supply this information. Later, UNUM revealed that an orthopedic surgeon had conducted the review, but still refused to name the individual who reviewed the file.

      14.    The Defendants' orthopedic surgeon-employee then interviewed Dr. Finn without notifying Dr. Goodman. After this interview and without physically examining Dr. Goodman, the Defendants' employee-doctor opined that the available medical records do not support Dr. Goodman's physical restrictions and limitations of no lifting over 40 pounds and no sitting in the

5

cold for extended periods.

15.     Based on the employee-doctor's review of Dr. Goodman's file and on the employee-doctor's interview with Dr. Goodman's primary care physician, the Defendants elected to terminate Dr. Goodman's disability payments by letter dated March 31, 2008.  Dr. Goodman still does not know the identity or the education of the employee-doctor "vocational expert."

16.     After receiving the letter terminating his disability benefits, Dr. Goodman was examined by Peter Lindy, M.D., an orthopedic surgeon in Memphis, Tennessee.  Dr. Lindy sent a letter to the Defendant on June 13, 2008, providing his opinion that Dr. Goodman continues to suffer from chronic lumbar strain that is easily aggravated by certain conditions.  Dr. Lindy opined that Dr. Goodman could continue to work as an anesthesiologist under the following conditions: (1) avoid sitting in cold rooms for greater than 1-2 hours; (2) avoid lifting more than 40-50 pounds; (3) avoid pushing and pulling more than 75-100 pounds.

17.     Based on Dr. Lindy's exam, Dr. Goodman appealed the termination of his residual disability benefits.  The Defendants disregarded Dr. Lindy's opinion, denied Dr. Goodman's appeal, and have continued to deny payment of Dr. Goodman's disability benefits.  Further, although the Defendants state that they relied on a doctor-employee's review of Dr. Lindy's findings in denying the appeal, the Defendants have not revealed the name of the doctor-employee, in violation of their own policies.  Dr. Goodman has received no further benefits from his claim, although his ability to perform the physical duties of his job as an anesthesiologist has not changed since his original injury in 1992.

## I. **BREACH OF CONTRACT**

6

The Plaintiff incorporates by reference as if fully set forth verbatim each and every allegation of this Complaint.

18.    Plaintiff alleges that the Defendants' conduct as set forth in the above paragraphs amounts to breach of contract, and requests incidental and  consequential damages resulting from the breach, which are listed below in paragraph 24.

## II. COMMON LAW BAD FAITH

The Plaintiff incorporates by reference as if fully set forth verbatim each and every allegation of this Complaint.

19.    The Defendants had a duty of dealing with its insured fairly and in good faith in handling a claim by its insured under the disability and/or "residual disability" provision of the disability insurance contract.  The Plaintiff avers that a fiduciary relationship was established between the Plaintiff and Defendants by virtue of Plaintiff's purchasing the disability insurance policy from Defendant PRL, requiring Defendants PRL and UNUM to handle the Plaintiff's claim with the utmost care and trust.  The violation of this duty to deal with the Plaintiff fairly and in good faith subjects the Defendants to liability for the extra-contractual tort of bad faith.

20.    The Plaintiff avers that Defendants' bad faith conduct and  failure to reinstate disability benefits exposes Defendants to liability for the unpaid benefits, plus interest and penalties.

21.    The Plaintiff avers that the conduct of the Defendants alleged herein was performed intentionally, recklessly, fraudulently and maliciously, entitling the Plaintiff to a substantial award of punitive damages.

## III. STATUTORY BAD FAITH

The Plaintiff incorporates by reference as if fully set forth verbatim each and every allegation of this Complaint.

22.    The Defendants had a duty of dealing with its insured fairly and in good faith in handling a claim by its insured under the "residual disability" provision of the disability insurance contract. The Plaintiff avers that a fiduciary relationship was established between the Plaintiff and Defendants when the Plaintiff purchased the disability policy from Defendant PRL. This fiduciary relationship required Defendants to handle the Plaintiff's claims with the utmost care and trust. Defendants' violation of its duty to deal with the Plaintiff fairly and in good faith subjects the Defendants to liability for all applicable bad faith penalties.

23.    Plaintiff further avers that Defendants' conduct as set forth herein constituted bad faith under Tenn. Code Ann. § 56-7-105 and inflicted additional expenses upon the Plaintiff sufficient to entitle the Plaintiff to all applicable bad faith penalties.

## IV. TENNESSEE CONSUMER PROTECTION ACT

The Plaintiff incorporates by reference as if fully set forth verbatim each and every allegation of this Complaint.

24.    Plaintiff further alleges that Defendants' conduct alleged herein constituted unfair and deceptive actions sufficient to subject Defendants to liability for violating the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, *et seq.*  Further, the Plaintiff alleges that the Defendants' unfair and deceptive actions as set forth herein were performed willfully, entitling the Plaintiff to treble damages provided by Tenn. Code Ann. § 47-18-109.

8

<tt>APR-01-2009 WED 02:50 PM BAILEY & BENFIELD          FAX NO. 901600580          P. 11</tt>

## V. DECLARATORY JUDGMENT

The Plaintiff incorporates by reference as if fully set forth verbatim each and every allegation of this Complaint.

25.   Plaintiff also seeks a Declaratory Judgment from this Honorable Court pursuant to Tenn. R. Civ. P. 57 and Tenn. Code Ann. § 29-14-101 *et seq.*, finding that Dr. Goodman's disability claim is meritorious and ordering the Defendants to pay benefits under the policy according to its terms.

## DAMAGES

26.   As a result of the Defendants' affirmative misconduct, the Plaintiff has been damaged. The Plaintiff seeks to recover all damages to which he may be entitled under the law from the Defendants and which include, but are not limited to, the following:

a)   Loss of use of funds due under the policies of insurance;
b)   Damages for violation of the Tennessee Consumer Protection Act including treble damages and attorney fees;
c)   All applicable bad faith penalties;
d)   Emotional pain and suffering;
e)   Statutory and discretionary costs;
f)   Punitive damages;
g)   Pre-Judgment Interest;
h)   Post-Judgment Interest;
i)   Incidental and consequential damages as a result of the Defendants' breach of contract, including but not limited to attorneys' fees and litigation expenses incurred in this action for reinstatement of Dr. Goodman's disability policy benefits; and
j)   All such further relief, both general and specific, to which they may be entitled under the premises.

9

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff Dr. Jack Goodman sues the Defendant Unum Group and Defendant PRL and prays for a judgment against the Defendants for breach of contract, common law bad faith, statutory bad faith, and violation of the Tennessee Consumer Protection Act, for a declaratory judgment ordering unpaid benefits to be paid immediately and future benefits paid in accordance with the provisions of the disability insurance contract, and for all damages to which he may be entitled under the law, including but not limited to compensatory, punitive, and treble damages in such amounts as may appear fair and reasonable to this Honorable Court, and for all such further relief, both general and specific, to which he may be entitled under the premises.

Respectfully submitted,

R. Sadler Bailey ( #011230)
Thomas R. Greer (#024452)
Attorneys for Plaintiff
6256 Poplar Avenue
Memphis, Tennessee 38119
(901) 680-9777

10

## CERTIFICATE OF SERVICE

I, Thomas R. Greer, do hereby certify that a true and correct copy of the foregoing has been served on the following via facsimile and U.S. Mail:

S. Russell Headrick
2200 Riverview Tower
900 South Gay Street
Knoxville, Tennessee 37902

rheadrick@bakerdonelson.com

This the 1st day of April, 2009.

Thomas R. Greer

*11√9*

IN THE CHANCERY COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH DISTRICT AT MEMPHIS

SHELBY COUNTY
CHANCERY COURT
APR 0 1 2009
DEWUN H. SETTLE, C & M
TIME:              BY:

JACK GOODMAN, M.D.,

    Plaintiff,

v.                                                     Case No.   CH-09-0434-1

UNUM GROUP, d/b/a Paul Revere Life Insurance
Company, also d/b/a UnumProvident Corporation,
also d/b/a Provident Life and Accident Insurance
Company, and

The Paul Revere Life Insurance Company,

    Defendants.

---

## PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANT PAUL REVERE LIFE INSURANCE COMPANY

---

COMES NOW the Plaintiff, by and through the undersigned attorney of record and pursuant to Tennessee Rules of Civil Procedure 33 and 34, and propounds the following Interrogatories and Requests for Production of Documents to the Defendant Paul Revere Life Insurance Company [hereinafter "PRL" or Defendant] to be answered separately and fully under oath within the time prescribed by the Tennessee Rules of Civil Procedure.

Said Interrogatories and Requests for Production of Documents are directed to PRL but include inquiry regarding information within the knowledge of PRL, its agents, or anyone else acting

1

on its behalf. Further, said Interrogatories and Requests for Production of Documents are to be considered continuing requiring the supplementation of an answer in the event new information is obtained by PRL, its attorney, agents or any other person acting on its behalf, subsequent to the time that PRL's original answers are served upon the Plaintiff. If the whole answer to a question is not known, so state, and answer the part known.

## DEFINITIONS

As used in these Interrogatories and Requests for Production of Documents served herewith, the following definitions and instructions shall apply:

1.      As used herein, the terms "you," "your," or "yourself" refer to the Defendant, and each agent, representative, attorney, or other person acting or purporting to act for said Defendant including all persons hired or retained to defend this case by Plaintiff's uninsured/underinsured motorist carrier.

2.      "Identify" as used herein to refer to a document means to state the nature of the document (e.g. "letter, memorandum to file," etc.), date, author, addressee, title or caption, subject matter, meaningful summary of the contents and the present custodian. Attaching a copy of the document in question to the response to these Interrogatories (properly indexed to the interrogatory) will suffice in lieu of further identification.

3.      As used herein, the term "communication" means any oral or written utterance, notation, or statement of any nature whatsoever, by and to whomever made, including but not limited to, correspondence, conversations, dialogues, discussions, interviews, consultations, agreements, and other understandings between or among two or more persons, by any means or mode of conveying information, including but not limited to telephone, facsimile, e-mail, any broadcast media or any

2

other form, whether written or spoken.

4.    The term "document(s)" is used in these requests in its most broad and liberal sense and means written, typed, printed, recorded or graphic matter, however produced or reproduced, of any kind and description, and whether an original, master, duplicate or copy, including, but not limited to, papers, notes, accounts, books, advertisements, catalogs, manuals, publications, correspondence, computer printouts, cablegrams, mailgrams, telegrams, memoranda, letters, communications, medical records, prescription records, logs, policies, procedures, including inter-office, and intra-office communications, reports, studies, analyses, pamphlets, calculations, projections, contracts, charts, plans, specifications, drawings, photographs, plats, sketches, schedules, surveys, agreements, working papers, corporate records, minutes of board of directors or committee meetings, books of account, ledger books, notebooks, vouchers, bank checks, cashier's checks, receipts for cashier's checks, canceled checks, check stubs, bill receipts, invoices, desk calendars, appointment books, diaries, diary entries and notes, minutes, transcriptions, sound or video recordings of any type of personal or telephone conversations or of negotiations, meetings or conferences, or things similar to any of the foregoing and all other papers, writings or physical things containing information, including preliminary drafts of or marginal notes appearing on any document, however denominated or described by the parties to whom the particular request is directed. Each document shall be designated as an original, a duplicate, or a copy thereof.

5.    If you claim any document is protected by a privilege of any description, list each document, including the date it was sent or received, the person(s) who wrote or sent the document, the person(s) to whom it was sent or received, and describe its contents.

6.    The term "any" shall be deemed to include and encompass the words "each" and

3

"all."

    7.    As used herein, the word "or" appearing in an interrogatory should not be read so as to eliminate any part of the request, but, wherever applicable, it should have the same meaning as the word "and."

    8.    With regard to the terms defined herein, all terms used in the singular shall include the plural and all terms used in the plural shall include the singular.

    9.    If you rely upon the attorney-client privilege or any other privilege as a ground for objection to production of any document called for in these discovery requests, please state for each such document which you refuse to produce:

    a.    the name and address of the author of the document;

    b.    the name and address of any person to whom the document was sent or to whom copies were sent or circulated at any time;

    c.    the name and address of any person currently possessing the document or a copy thereof;

    d.    a brief description of the nature and subject matter of the document (i.e., letter, memorandum, invoice, contract);

    e.    the nature of the privilege claimed.

    10.    If any document requested has been lost or destroyed since its creation, identify that document, state when, where, how and by whom the document was destroyed and state the name of the person who has had custody of the document.

## INTERROGATORIES

**INTERROGATORY NO. 1:**    State the name, address, telephone number, present employer, and job classification or position of each and every person assisting in the preparation of

the answers to these interrogatories; identifying the Answers, or portions of Answers, for which (s)he

is responsible or which (s)he assisted in preparing.

**ANSWER:**

**INTERROGATORY NO. 2:**      With regard to the claim for disability benefits

submitted by Plaintiff Jack Goodman, state:

(a) The date you first received such a claim;

(b) If you now take the position, or have ever taken the position, that no coverage is afforded under your policy for this claim, please state the basis for each denial;

(c) List and identify each and every document, recording, e-mail, telephonic memorandum, note, or other document of any nature whatsoever which you have in your possession concerning Plaintiff's claim for disability benefits, and for each such document state:

    (1) the title of the document;

    (2) the author of the document;

    (3) the date of the document; and

    (4) the person who is the custodian of such document and that person's address and telephone number.

**ANSWER:**

**INTERROGATORY NO. 3:**      With respect to all policies providing disability and

residual disability coverage to the Plaintiff and issued by PRL to the Plaintiff which is at issue in this

lawsuit, state:

(a) the inception and expiration dates of said policy;

(b) the amount of monthly benefits due at the time the Plaintiff's benefits were terminated, and

(c) list any and all provisions contained in the policy which you contend limit the disability or residual disability benefits available to the Plaintiff.

5

**ANSWER:**

**INTERROGATORY NO. 4:**          At the time of the termination of benefits at issue in this

lawsuit, did your company have any policies or rules pertaining to adjusting or investigating

disability or residual disability benefits provided in your policy? If you did, state:

      (a)    what the policy was and the rules in detail;

      (b)    whether that policy and those rules were in force at time of the termination of
              benefits at issue, and how long prior to the termination of benefits they were in
              effect;

      (c)    whether the policy or rules were incorporated in a claims manual distributed to your
              personnel involved in the investigation and adjustment of claims;

      (d)    if such a manual was in existence, the name of the document, the year of its
              publication, the names and positions of the persons who presently have a copy, and
              whether each of said persons was employed by you at the time Plaintiff's benefits
              were terminated.

**ANSWER:**

**INTERROGATORY NO. 5:**          At the time of the termination of benefits at issue, what

instructions had been given to officers, employees, agents, and attorneys, or any other persons

involved in the investigation or adjusting of disability or residual disability claims, or had been

provided in policies issued by PRL, with respect to investigating claims, adjusting claims, and

terminating claims.

**ANSWER:**

**INTERROGATORY NO. 6:**          State how long the instructions referred to in your

Answer to the preceding Interrogatory had been in effect prior to the termination of benefits at issue

and how long they continued in effect after you terminated Dr. Goodman's residual disability

benefits.

6

**ANSWER:**

**INTERROGATORY NO. 7:**      State the names of all adjusters, claims personnel,

physicians, claims managers, attorneys, or other personnel at any time employed or hired by you or

by Defendant UNUM to handle, or participate in, investigation or settlement of Plaintiff's claims

for disability and/or residual disability benefits under the policy issued by PRL. With respect to each

such person, state:

    (a)     the capacity in which (s)he was employed or hired;

    (b)     the period of time (s)he was so employed or hired;

    (c)     whether (s)he is presently employed by you and in what capacity;

    (d)     his or her present or last known address; and

    (e)     his or her present or last known employer.

**ANSWER:**

**INTERROGATORY NO. 8:**      With reference to Plaintiff's claim for disability and/or

residual disability benefits, did any of your officers, employees, attorneys, or other agents involved

in the handling of the claim receive any instructions from you that the benefits were to be

terminated? If they did, state:

    (a)     the date or dates on which such instructions were given;

    (b)     by whom such instructions were given;

    (c)     to whom such instructions were given;

    (d)     whether such instructions were given orally or in writing;

    (e)     if given orally, were any memoranda or record of any kind made of such instructions;

           and

(f)      if memoranda or records were made, the name and address of their present custodian.

**ANSWER:**

**INTERROGATORY NO. 9:**      Please provide the terms of the Unum Provident Multistate Examination and Settlement that was reached with the Tennessee Department of Commerce and Insurance in 2008, including the portions that pertain to the adjustment, investigation and payment of disability and residual disability claims by PRL.

**ANSWER:**

**INTERROGATORY NO. 10:**      Within the last five years, have you been charged with negligently or in bad faith failing to pay disability or residual disability benefits? If so, state the name and address of every attorney or insured alleging you negligently or in bad faith failed to pay disability or residual disability benefits.

**ANSWER:**

**INTERROGATORY NO. 11:**      With respect to each claim referred to in your Answer to the preceding Interrogatory, state:

(a)      whether litigation was commenced against you based on your failure to pay disability or residual disability benefits;

(b)      the name of the court wherein such litigation was commenced and the number and caption of the case; and

(c)      the disposition of the litigation regardless of whether suit was filed.

**ANSWER:**

8

**INTERROGATORY NO. 12:**     Please provide the information concerning

PRL's relationship with co-Defendant UNUM, including, but not limited to the following:

    (a)      How is your claims department structured?

    (b)      Do UNUM employees evaluate and manage claims made on policies that are issued

           by PRL?

    (c)      Do UNUM employees have authority over decisions involving PRL claims

           management?

    (d)      Do UNUM executives have authority over the management of PRL?

    (e)      Do PRL executives have authority over the management of UNUM?

    (f)      What are the names and addresses of UNUM executives who sit on the governing

           Boards of both PRL and UNUM?

    (g)      What are the names and addresses of PRL executives who sit on the governing

           Boards of both PRL and UNUM?

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**   Please produce a copy of each and every document or thing which

supports, substantiates, supplements, refutes or describes any of your responses to the preceding

Interrogatories.

**ANSWER:**

**REQUEST NO. 2:**   Please produce, in its entirety, the PRL claims file, the PRL

underwriting file, any other file and/or documents maintained or in the possession of PRL's agents

regarding the disability or residual disability claim at issue, as well as any and all other documents

in Defendant's possession or control, or in the possession or control of its agents, employees and/or attorneys, relating to the disability insurance policy issued to the Plaintiff and which is the subject matter of this litigation

**RESPONSE:**

**REQUEST NO. 3:**    If you claim that any of the above requested documents are privileged and therefore not subject to production, with respect to each such document, state:

    (a)    The exact nature of the privilege claimed;

    (b)    The nature of the document withheld under the alleged privilege (correspondence, memoranda, recording, etc.);

    (c)    The identity of the party who authored the document and the party who received it; and

    (d)    Generally summarize the contents of the allegedly privileged document.

**RESPONSE:**

**REQUEST NO. 4:**    Please produce a copy of each and every document in the possession or control of PRL relating to the claims made by Plaintiff and PRL's evaluation of the claims made by Plaintiff.

**RESPONSE:**

**REQUEST NO. 5:**    Please produce a copy of all policies, rules, guidelines, regulations and handbooks utilized by PRL and its agents and employees which deal in any respect with the receipts of claims, the evaluation of claims, the adjustment of claims, the investigation of claims and/or the payment of claims.

**RESPONSE:**

**REQUEST NO. 6:**   Please produce a copy of the Unum Provident Multistate Examination and Settlement reached with the Tennessee Department of Commerce and Insurance.

**RESPONSE:**

Respectfully Submitted,

R. Sadler Bailey (#11230)
Thomas R. Greer (#024452)
Bailey & Benfield, PLLC
Attorneys for Plaintiff
6256 Poplar Avenue
Memphis, Tennessee 38119
(901) 680-9777

11

## CERTIFICATE OF SERVICE

I, Thomas R. Greer, do hereby certify that a true and correct copy of the foregoing has been served on the following via facsimile and U.S. Mail:

S. Russell Headrick
2200 Riverview Tower
900 South Gay Street
Knoxville, Tennessee 37902

rheadrick@bakerdonelson.com

This the 1st day of April 2009.

Thomas R. Greer