```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF TENNESSEE
                       WESTERN DIVISION
```

| | |
|---|---|
| JACK GOODMAN, M.D., | ) |
| | ) |
| | ) |
| | )    Case No. 09-2223 |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNUM GROUP, d/b/a PAUL | ) |
| REVERE LIFE INSURANCE CO., | ) |
| also d/b/a/ PROVIDENT LIFE | ) |
| AND ACCIDENT INSURANCE CO., | ) |
| also d/b/a/ UNUM PROVIDENT | ) |
| CO., | ) |
| | ) |
| | ) |
| | ) |
| | ) |
|     Defendants. | ) |

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**

Before the Court is Plaintiff Jack Goodman's April 22, 2009, Motion to Remand his breach-of-contract suit against Defendants UNUM Group and its subsidiary Paul Revere Life Insurance Company to the Chancery Court for Shelby County, Tennessee. Goodman argues that complete diversity is lacking because Defendant UNUM Group is more than a nominal defendant and that a court could grant Goodman recovery against UNUM on at least some of his causes of action. Cf. Coyne ex rel. Ohio v. Am. Tobbaco Co., 183 F.3d 488, 493

(6th Cir. 1994) ("fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds"). The Court agrees and, therefore, GRANTS Plaintiff's motion to remand.

### I. Factual Background

Goodman is a physician who, until 1992, was a practicing anesthesiologist. (Compl. ¶¶ 7, 10.) In 1985, Goodman purchased a disability insurance policy, known as a "Preferred Professional Policy," from Defendant Paul Revere Life Insurance Company ("Paul Revere"). (Id. ¶ 4.) The policy provided that Goodman would receive a monthly benefit if he became unable to work full time because of injury or illness. (Id. ¶ 5.) In 1991, Goodman purchased a rider, which added additional coverage to the policy. The maximum monthly benefit became $8,000, to which a $1,000 cost-of-living allowance was added. The cost-of-living allowance increases each year with inflation. (Id. ¶ 6.)

Goodman suffered a back injury in 1992 and was unable to return to his work as a full-time practicing anesthesiologist. (Id. ¶ 7.) Goodman's physician diagnosed him as having Lumbar Radicular Syndrome, characterized by pain in his back and legs, lower back spasms, and a decreased range of motion. (Id.) On April

2

5, 1993, Goodman returned to work in a limited capacity, supervising nurse anesthetists at Crittenden County (Ark.) Hospital. In this new position, Goodman made less than he had in private practice so that Paul Revere continued to pay the monthly benefit due under his disability policy. (Id. ¶ 9.)

Goodman continued to work for the Crittenden County Hospital until January 31, 2006, when the requirements of his supervisory job became "too strenuous to perform with a back injury." (Id. ¶ 10.) Despite seeking comparable work, Goodman was unable to find a new position supervising nurse anesthetists until January 2009, when he signed a contract with Baptist Memorial Hospital in Memphis, Tennessee. (Id.) Goodman alleges that he earns less in his current contractual position with Baptist than he did in private practice. (Id.)

Paul Revere terminated Goodman's disability benefits on March 31, 2008. (Id. ¶ 14.) Goodman alleges that this termination occurred after a review of his file by employees of Defendant UNUM Group ("UNUM"), working under contract for its subsidiary Paul Revere. (Id. ¶¶ 12-14.) Following the termination of his disability benefits, Goodman underwent an examination by Dr. Peter Lindy, an orthopedic surgeon in Memphis. Lindy opined that Goodman

3

could continue to work as an anesthesiologist as long as Goodman avoided 1) sitting in a cold room for more than one to two hours, 2) lifting more than forty to fifty pounds, and 3) pushing and pulling any more than seventy-five to one hundred pounds. (Id. ¶ 15.) These were largely the same restrictions under which Goodman had worked since his 1992 injury. (Cf. id. ¶ 9.) Paul Revere did not reverse its decision to terminate the disability-benefit payments. (Id. ¶ 16.)

On February 27, 2009, Goodman filed suit in the Chancery Court for Shelby County, Tennessee, to contest Defendants' decision to terminate his disability benefits. Goodman alleges four causes of action: breach of contract; breach of the common law duty of good faith; breach of the statutory duty of good faith, see Tenn. Code Ann. § 56-7-105 (providing for a 25% penalty when an insurance company fails to pay a claim in bad faith); and violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-109(a)(1). (Compl. ¶¶ 17-23.) Goodman also seeks a declaratory judgment that Goodman is disabled within the meaning of his insurance policy. (Id. ¶¶ 24.)

Defendants removed Goodman's suit to this Court on April 15, 2009, asserting that this Court has diversity jurisdiction. See 28 U.S.C. § 1332(a). Specifically,

Defendant UNUM alleges that it is not a proper party because Defendant Paul Revere issued the policy and no privity of contract exists between Paul Revere and UNUM. (Notice of Removal at 2.) ("Notice") Instead, UNUM alleges that Goodman has no cause of action against it and fraudulently joined UNUM, a Tennessee corporation, for the purpose of destroying the diversity jurisdiction that would otherwise exist in this suit between Goodman, a Tennessee citizen, and Paul Revere, a Massachusetts corporation. (Notice at 3.) Goodman contests these assertions through the present motion and seeks attorney's fees from Defendants for the wrongful removal. See 28 U.S.C. § 1447(c).

## II. Standard of Review

Any party may remove an action originally filed in state court to federal court if a federal district court would have had original jurisdiction over the dispute. See id. § 1441(a). Where the asserted basis for removal is diversity jurisdiction, a federal court may only entertain the suit if complete diversity exists at the time of removal. Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267 (1806) (requiring that all parties to a suit be diverse in order to invoke a federal court's diversity jurisdiction); SHR Ltd. P'ship v. Braun, 888 F.2d 455, 456

(6th Cir. 1989) (same).  The party seeking to remove an action to federal court bears the burden of proving that removal is proper.  Her Majesty the Queen in Right of the Province of Ontario v. Detroit, 874 F.2d 332, 339 (6th Cir. 1989).

Defendants assert that diversity jurisdiction exists because Goodman fraudulently joined UNUM as a Defendant. Therefore, they bear the burden of demonstrating that "it [is] clear that there can be no recovery [against UNUM] under the law of the state on the cause alleged or on the facts in view of the law." Alexander v. Elec. Data Sys. Corp., 13 F.3d 940, 949 (6th Cir. 1993) (quoting Bobby Jones Garden Apts., Inc. v. Suleski, 391 F.2d 172, 176 (5th Cir. 1968)).  In other words, the Defendants must prove that there is no "reasonable basis for predicting that [the plaintiff] could prevail."  Id. (quoting Tedder v. F.M.C. Corp., 590 F.2d 115, 117 (5th Cir. 1979)) (alteration in original).  Defendants' burden "of demonstrating fraudulent joinder is a heavy one." Griggs v. State Farm Lloyds, 181 F.3d 694, 701 (5th Cir. 1999).  This is because a plaintiff receives "more favorable treatment in a fraudulent joinder inquiry than . . . in a [Rule] 12(b)(6) inquiry."  In re Ford Motor Co. Crown Victoria Police Interceptor Prods. Liability Litig., MDL No. 1488, 2004 U.S. Dist. LEXIS

6

29971, at *31 (N.D. Ohio May 19, 2004) (quoting Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999) (alteration in original)).

### III. Analysis

Although Goodman raises several causes of action in his complaint, he focuses his response to the Defendants' motion to dismiss on the theory of alter ego. (Memorandum in Support of Plaintiff's Motion to Remand at 9-11.) Goodman notes that, although UNUM asserts that Paul Revere made all the relevant decisions, notice of decisions about the termination of his benefits came on UNUM letterhead. (Id. Ex. B.) Goodman has filed the deposition of Susan Roth, UNUM's vice president and assistant general counsel. In her testimony, Roth explains that, since its purchase by UNUM, Paul Revere has essentially no employees or executives of its own. (Plaintiff's Amended Memorandum in Support of Motion to Remand Ex. A at 35, 41-42.) ("Roth Dep.") Instead, Paul Revere borrows employees from its parent company UNUM, and Paul Revere's executives hold similar titles with UNUM. Employees' work for Paul Revere is governed by a General Services Agreement entered into on April 17, 1998. (Roth Dep. at 30.) Under the General Services Agreement, UNUM employees perform all of Paul Revere's "comprehensive claim management services,"

7

including deciding whether Paul Revere will pay its insureds' claims. (Id. at 42-43.) Goodman notes that other courts have found Paul Revere and UNUM jointly liable for Paul Revere's decision to deny insurance claims. See, e.g., Merrick v. Paul Revere Life Ins. Co., 594 F. Supp. 2d 1168, 1192 (D. Nev. 2008) (upholding $26.4 million punitive damages verdict against UNUM).

UNUM responds that its relationship with Paul Revere is like that found in many parent-subsidiary relationships. (Defendants' Opposition to Plaintiff's Motion to Remand at 10-11.) ("Defs' Resp.") Although UNUM does not dispute Roth's characterization of the relationship between UNUM and Paul Revere, UNUM does argue that, under Tennessee law, a court may only pierce a corporation's veil if the subsidiary corporation does not have adequate funds to pay for any judgment rendered against it. (Defs' Resp. at 13-15.) Responding to Goodman's citation of cases where courts have found UNUM and Paul Revere jointly liable, UNUM cites several recent cases where federal courts have concluded that UNUM cannot be held liable under an alter ego theory. See, e.g., Perry v. UNUM Life Ins. Co. of Am., 353 F. Supp. 2d 1237, 1240 (N.D. Ga. 2005) (noting Georgia law's requirement of insolvency as a prerequisite to piercing the corporate veil).

8

Under Tennessee law, a corporation is a "distinct entit[y]" from its shareholders, and, absent exigent circumstances, the shareholders are not liable for the debts of the corporation. Cambio Health Solutions, LLC v. Reardon, 213 S.W.3d 785, 790 (Tenn. 2006); see also Tenn. Code Ann. § 48-16-203(b) ("A shareholder of a corporation is not personally liable for the acts or debts of the corporation except that the shareholder may become personally liable by reason of the shareholder's own acts or conduct.") A litigant may overcome the presumption that a corporation is a distinct entity by demonstrating that the corporate form has aided the perpetration of a fraud or the performance of illegal acts. Pamperin v. Streamline Mfg., Inc., 276 S.W.3d 428, 437 (Tenn. Ct. App. 2008).

Whether to pierce the corporate veil is a highly fact-bound, equitable inquiry in which each case "must rest upon its special facts." Boles v. Nat'l Dev. Co., 175 S.W.3d 226, 244 (Tenn. Ct. App. 2005) (internal quotation marks and citation omitted). One such situation is where the subsidiary corporation is a mere alter ego of its parent. Pamperin, 276 S.W.3d at 437. A court will pierce the veil of a subsidiary corporation and hold the parent liable when three factors are present:

9

> (1) The parent corporation, at the time of the transaction complained of, exercises complete dominion over its subsidiary, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the corporate entity, as to that transaction, had no separate mind, will or existence of its own.
>
> (2) Such control must have been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of third parties' rights.
>
> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

Continental Bankers Life Ins. Co. of the South v. Bank of Alamo, 578 S.W.2d 625, 632 (Tenn. 1979).

Examining Goodman's complaint in light of the three-factor alter ego test, this Court cannot say it is clear Goodman cannot recover against UNUM. Alexander, 13 F.3d 949. Goodman has submitted evidence demonstrating that Paul Revere has no employees or even executives of its own so that UNUM employees make all decisions about which insurance claims are paid. (Roth Dep. at 30, 42-43.) A trier-of-fact could find that, under such an arrangement, Paul Revere effectively "had no separate mind, will or existence of its own." Continental Bankers, 578 S.W.2d at 632. Goodman alleges that UNUM's actions led to the wrongful termination of his disability benefits although Paul Revere, and by extension its parent UNUM, was aware

10

that no significant change in Goodman's medical condition had occurred.  (Compl. ¶¶ 9, 15-16.)  If true, that termination would violate Paul Revere's contractual duty to Goodman under its insurance policy as well as UNUM's contractual obligation under the General Services Agreement with Paul Revere to run Paul Revere's claims processing competently.[1]  Thus, a wrong would have occurred that proximately caused Goodman to suffer significant financial harm.  Continental Bankers, 578 S.W.2d at 632.  Goodman could satisfy Tennessee's test for alter ego liability.

In addition to the alter ego test, Tennessee courts generally consider a number of equitable factors when determining whether piercing the corporate veil is appropriate.  Those factors are:

> (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the nonissuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal

---

[1] The same facts could also establish a violation of Tennessee's statutory duty to pay or deny claims only in good faith.  See Tenn. Code Ann. § 56-7-105.

11

>transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arms length relationships among related entities.

Pamperin, 276 S.W.3d at 438 (quoting FDIC v. Allen, 584 F. Supp. 386, 397 (E.D. Tenn. 1984)). No one factor is dispositive, and a litigant can succeed in piercing the corporate veil by showing that "[e]ven though corporate formalities have been observed . . . he has been the victim of some basically unfair device by which the corporate form of business organization has been used to achieve an inequitable result." Schlater v. Haynie, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991); see also Boles, 175 S.W.3d at 245.

In addition to the possible use of a business organization to achieve an inequitable result, Goodman's facts as currently pled implicate a number of the veil-piercing factors Tennessee courts balance. Goodman has demonstrated through the testimony of one of UNUM's officers that Paul Revere shares UNUM's employees and that UNUM could be said to use Paul Revere merely as a business conduit. (Roth Dep. at 30, 42-43.) Such a close working relationship and the sharing of corporate officers raise questions about whether Paul Revere and UNUM maintain an

12

arm's length relationship.  (See id. at 41.)  Goodman alleges that UNUM/Paul Revere wrongfully terminated his benefits, possibly as part of a larger policy to increase profitability.  Other courts have found the Defendants jointly liable when faced with similar allegations of wrongdoing.  See, e.g., Merrick, 594 F. Supp. 2d at 1192; Hangarter v. Paul Revere Life Ins. Co., 236 F. Supp. 2d 1069, 1074-76 (N.D. Cal. 2002).  This Court has determined that such claims against UNUM are sufficiently consequential to support a potential plaintiff's judgment under Tennessee law.  See Stone v. UNUMProvident Corp., No. 03-2369 Ma/V, slip op. at 4-6 (W.D. Tenn. Nov. 19, 2003).

Defendants have cited several cases in which other federal courts have held that the alter ego theory would not support liability against UNUM.  See, e.g., Perry, 353 F. Supp. 2d at 1240; Univ. Med. Assocs. of the Medical Univ. of S.C. v. UNUMProvident Corp., 333 F. Supp. 2d 479, 483 (D.S.C. 2004).  Two of the cases Defendants cite are inapposite because the law of the state being applied required the subsidiary corporation to be insolvent before a court could pierce the corporate veil.  See Adams v. UNUM Life Ins. Co. of Am., 508 F. Supp. 2d 1302, 1315 (N.D. Ga. 2007) (interpreting Georgia law); Perry, 353 F. Supp. 2d at 1240 (same).

13

Tennessee law considers the insolvency of a subsidiary as one factor among many courts may consider – not as a prerequisite. Cf. Continental Bankers, 578 S.W.2d at 632; Pamperin, 276 S.W.3d at 438. Similarly, Tennessee law looks to whether the parent dominated the subsidiary, rather than solely to whether the corporate form was respected. Compare Continental Bankers, 578 S.W.2d at 632 (examining whether the parent corporation exercises "complete dominion" over the subsidiary's financial and policy decisions), with Univ. Med. Assocs., 333 F. Supp. 2d at 483 (noting that the primary prong of South Carolina's veil-piercing inquiry is whether "the corporation[] adhere[d] to the corporate form").

Although Wisconsin applies the same three-factor alter ego test Tennessee uses, the plaintiff in the case Defendants cite relied only on information found on UNUM's website in attempting to prove that UNUM dominated Paul Revere. See McVeigh v. UNUMProvident Corp., 300 F. Supp. 2d 731, 741 (W.D. Wis. 2002). Goodman has done more than a simple Google search; he has presented deposition testimony from one of UNUM's officers that Paul Revere has no employees of its own and that UNUM makes all decisions as to which claims Paul Revere pays. (Roth Dep. at 30, 42-43.)

14

Defendants' final citation, Wady v. Provident Life & Accident Ins. Co. of Am., 216 F. Supp. 2d 1060, 1070 (C.D. Cal. 2002), is inapposite because the plaintiff in Wady failed to assert the alter ego theory in any of her pre-summary judgment pleadings, so that the court's discussion of the alter ego theory is dicta. See id. at 1066-67. But see Hangarter, 236 F. Supp. 2d at 1074-76 (awarding $7.67 million against UNUM and Paul Revere under California law for breach of contract and bad-faith denial of an insurance claim).

**IV. Conclusion**

In light of the evidence presented at this early stage of the litigation, Defendants have not met their heavy burden of demonstrating that it is clear that Goodman could not recover on any of his claims against UNUM. See Alexander, 13 F.3d 949. This Court, therefore, finds that Goodman did not fraudulently join UNUM as a party to this suit. Because it is undisputed that UNUM is a Tennessee corporation, complete diversity does not exist; and this Court does not have subject matter jurisdiction. See SHR Ltd. P'ship, 888 F.2d 456. Goodman's motion to remand is GRANTED.

The extensive analysis required to determine whether removal was proper demonstrates that, although ultimately

15

unsuccessful, UNUM did not "lack[] an objectively reasonable basis for seeking removal" to federal court. <u>Martin v. Franklin Capital Corp.</u>, 546 U.S. 132, 141 (2005). Goodman has not pointed to any "unusual circumstances" warranting an award of attorney's fees under 28 U.S.C. § 1447(c). Goodman's motion for attorney fees and costs is DENIED. <u>See</u> <u>Martin</u>, 546 U.S. at 141 ("Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.").

So ordered this 24th day of November, 2009.

> s/ Samuel H. Mays, Jr.
> SAMUEL H. MAYS, JR.
> UNITED STATES DISTRICT JUDGE